Raymond J. PAIGE and Patricia C. Paige, his wife, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 75–2669.

United States Court of Appeals, Ninth Circuit.

Aug. 17, 1978.

Edmond G. Thiede (argued), Bancroft, Avery & McAllister, San Francisco, Cal., for plaintiffs-appellants.

---

Ann Belanger Durney, Atty. (argued), Dept. of Justice, Washington, D. C., for defendant-appellee.

Before Judges TRASK and SNEED, Circuit Judges, and SKOPIL,[*] District Judge.

SKOPIL, District Judge:

Plaintiff-taxpayers appeal from the denial of their claim for a tax refund. The issue involved is whether taxpayers' corporation qualified for the subchapter S election provided in 26 U.S.C. § 1371 (1954).[1] We hold that it did not. We affirm.

Tackmer made the subchapter S election in 1965. The government now contends that Tackmer Corporation had more than one class of stock.

Tackmer is a small California company that was first incorporated in 1965. When Tackmer first issued stock, it received two different kinds of consideration. Plaintiffs and another party assigned their rights to an exclusive license agreement in exchange for Tackmer stock ("property shareholders"). Eight other parties paid cash ("cash shareholders").

The Articles of Incorporation state that "No distinction shall exist between the shares of the corporation [or] the holders thereof." (R. p. 206). The applicable California Corporation Code, § 304 (West 1949),[2] stated that there could be no distinction between shares unless specified in the Articles.

Before Tackmer could issue any stock, it was required to obtain a permit from the California Department of Corporations. The California Corporation Code gave the Department authority to impose conditions on corporations for the protection of the

---

* The Honorable Otto R. Skopil, Jr., United States District Judge for the District of Oregon, sitting by designation.

1. The statute as it read in 1965 is controlling here. It was slightly amended in 1976. Pub.L. No.94–455 § 902, 90 Stat. 1608, 1609.

2. Now codified in Cal.Corp.Code § 203 (West 1977).

public.[3] Pursuant to this authority the Department had a policy of imposing certain conditions on small corporations such as Tackmer which were capitalized with both cash and property that had an indeterminate value. The purpose of the conditions was to protect the shareholders who paid with cash from having their interests diluted by overissue of stock to the shareholders who paid with property.

The conditions imposed by the Department of Corporations were as follows:

(a) The stock had to be deposited in escrow and could not be sold without the Department's consent;

(b) If the company defaulted on dividend payments for two years, the cash shareholders would have irrevocable power of attorney to vote the property shareholders' shares for the board of directors;

(c) On dissolution, the property shareholders had to waive their rights to the distribution of assets until the cash shareholders had received the full amount of their purchase price plus any unpaid accumulated dividends at 5% per year;

(d) The property shareholders had to waive their rights to any dividends until the cash shareholders annually received cumulative dividends equal to 5% of the purchase price per share;

(e) The conditions were to remain in effect until the shares were released from escrow (R. pp. 483–84). The conditions were in effect from 1965 to 1970.

The property shareholders signed an agreement with the company stating that they would abide by the conditions. The taxpayers admit that the conditions could have been waived by the cash shareholders. (App. Br., pp. 6–7) Notwithstanding the conditions, the differences between the two kinds of shareholders were never taken into account and all dividends were distributed on a pro rata basis.

A corporation must meet six requirements in order to qualify for subchapter S tax treatment. The applicable statute reads:

"For purposes of . . . subchapter [S, a qualifying corporation is] a domestic corporation which is not a member of an affiliated group . . . and which does not—

"(1) have more than 10 shareholders;

"(2) have as a shareholder a person (other than an estate) who is not an individual;

"(3) have a nonresident alien as a shareholder; and

"(4) *have more than one class of stock.*" 26 U.S.C. § 1371 (1954) [emphasis added].

The taxpayers filed a timely joint tax return in 1970. The return claimed their proportionate share of Tackmer's investment credit and an income averaging tax reduction relating to Tackmer's income and losses for the years before 1970. On January 14, 1973, the Commissioner of Internal Revenue disallowed these claims and assessed additional taxes of $244.64 plus $37.30 interest (total: $281.94). The reason stated for the disallowance was that the conditions imposed by the California Department of Corporations created more than one class of stock, disqualifying Tackmer for subchapter S treatment.

On October 25, 1973, the taxpayers prepaid the tax and filed a timely claim for refund. On December 7, 1973, the government sent taxpayers a Notice of Disallowance of the claim. On December 12 the taxpayer filed this action.

The issue was submitted to the District Court for the Central District of California on cross motions for summary judgment. The court entered judgment for the United States.

---

3. Cal.Corp.Code § 25508 (West 1949) provided: "AUTHORITY TO IMPOSE CONDITIONS FOR PROTECTION OF PUBLIC. The commissioner may impose conditions requiring the deposit in escrow of securities . . . , the waiver of assets and dividends by holders of promotional securities, and such other conditions as he deems reasonable and necessary or advisable for the protection of the securities."
This section was repealed by 1968 Cal.Stat. c. 88 p. 243, § 1 (1969). Former § 25508 is similar to Cal.Corp.Code § 25141 (West 1977).

■ The taxpayers contend that because the Articles and state law authorized only one class of stock, there can be only one class for subchapter S purposes. We hold, however, that the interpretation of subchapter S qualifications is a federal question. *Kean v. Commissioner of Internal Revenue*, 469 F.2d 1183 (9th Cir. 1972).

Treas.Reg. § 1.1371–1(g) provides that "If the outstanding shares of stock of the corporation are not identical with respect to the *rights* and interests which they convey in the control, profits, and assets of the corporation, then the corporation is considered to have more than one class of stock" [emphasis added]. The cash shareholders had preferred rights over property shareholders, notwithstanding that the cash shareholders chose not to exercise those rights. The possibility of the exercise of differing rights is enough to disqualify a corporation for subchapter S tax treatment.

■ Taxpayers' assertion that Tackmer in fact made all distributions on a pro rata basis is irrelevant. A corporation's qualifications for subchapter S status is judged at the date of election. See, *Barnes Motor & Parts Co. v. United States*, 309 F.Supp. 298 (E.D.N.C.1970). The court may not consider Tackmer's actual distributions after its election. The language in the statute is clear. Tax planners must be able to assume that the court will give it its plain meaning.

Taxpayers assert that Treas.Reg. § 1.1371–1(g) has been overturned as applied to them by *Parker Oil Company*, 58 T.C. 985 (1972) and the Service's acquiescence in Rev.Rul. 73–611, 1973–2 C.B. 312. Taxpayers contend that the Regulation was found to be inconsistent with the basic purpose of the requirement that there be one class of stock. We disagree. *Parker Oil* involved only voting rights arising out of shareholder agreements. It did not involve distributions from the corporations. Control of distributions is at the heart of the one class of stock requirement. This aspect of Treas.Reg. § 1.1371–1(g) was untouched by *Parker Oil*.

The taxpayers also cite *Portage Plastics Co. v. United States*, 486 F.2d 632 (7th Cir. 1973); *Shores Realty Co. v. United States*, 468 F.2d 572 (5th Cir. 1972); and *Amory Cotton Oil Co. v. United States*, 468 F.2d 1046 (5th Cir. 1972). The taxpayers assert that these cases undercut the Treasury Department Regulations. However, these cases hold only that the Regulations may not create a presumption that all debt which is reclassified as equity automatically creates a second class of stock. In that situation the former debt could be identical to the original equity. That is distinguishable from the case here.

There is a strong policy behind the requirement that subchapter S corporations have only one class of stock. The corporations themselves pay no corporate income tax. The shareholders pay individual income tax on a pro rata share of all corporate income, regardless of whether any money or property has actually been distributed to the shareholder. If the statute allowed more than one class of stock, complicated allocation problems could arise.

The example given in the government's brief illustrates the potential problems. Assume that during its first taxable year Tackmer had earnings and profits of $5,500 and had declared and paid a preference dividend to the cash shareholders only. Pursuant to Condition (d) of the California Department of Corporations requirements, the minimum dividend would be $2,575. This would leave the corporation with an undistributed taxable income of $2,925. This sum would be taxed pro rata to all the shareholders:

| | |
|---|---|
| To the cash shareholders _____ (who have 5,100 of the 14,300 shares) | $1,043 |
| To the property shareholders _____ (who have 9,200 of the 14,300 shares) | $1,882 |
| | $2,925 |

If Tackmer had no earnings and profits its second year, it would still be obligated to pay $2,575 under Condition (d). It would pay the distribution out of funds generated during its first year. That is, it would pay to the cash shareholders money that had been taxed to, but not received by, both cash and property shareholders. In computing the proper liability of cash shareholders with respect to this distribution, it

**964**

would be necessary to attribute in an equitable manner to cash shareholders taxes paid by property shareholders. This would introduce substantial complexity in the administration of subchapter S. It was this type of *potential* difficulty which Congress sought to avoid by limiting subchapter S corporations to one class of stock.

█ We agree with the taxpayers that the purpose of subchapter S is to benefit small corporations such as the one here. It is unfortunate that a requirement of state law has caused a result that no one intended. However, the taxpayers' subjective intent to create one class of stock cannot be allowed to override statutory requirements. Cf. *Gamman v. Commissioner of Internal Revenue*, 46 T.C. 1 (1966). Congress has set forth specific objective requirements for subchapter S qualification, and we must follow the mandate of the statute.

WE AFFIRM.