Frances U. BRENNAN, as Executrix of the Last Will and Testament of William J. Brennan, Deceased, etc., et al., Plaintiffs-Appellees,

v.

A. J. O'DONNELL, District Director of Internal Revenue, Defendant-Appellant.

No. 27705.

United States Court of Appeals, Fifth Circuit.

May 12, 1970.

Macon L. Weaver, U. S. Atty., Birmingham, Ala., Lester R. Uretz, Chief, Internal Revenue Dept., Washington, D. C., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Chief, Appellate Section, Tax Div., Jonathan S. Cohen, Michael B. Arkin, Harry Baum, Howard M. Koff, Stuart A. Smith, Attys., Dept. of Justice, Washington, D. C., for defendant-appellant.

C. V. Stelzenmuller, Birmingham, Ala., for plaintiffs-appellees.

Before BELL, AINSWORTH and CARSWELL,* Circuit Judges.

AINSWORTH, Circuit Judge.

The issue presented in this case is whether certain cash advances made by taxpayers to a corporation in which they were shareholders should be considered as creating a class of stock in the corporation for the purpose of determining the corporation's eligibility to obtain the special tax treatment made available by Subchapter S, Int.Rev.Code of 1954, §§ 1371–1377, to "small business corporations" and their shareholders. If these advances are not to be considered as creating a class of stock in the corporation,

---

* Judge Carswell, having resigned on April 20, 1970, did not participate in the decision or opinion in this case.

as the District Court concluded, the corporation qualified for Subchapter S treatment during the taxable years 1961 and 1962, and taxpayers were, therefore, entitled to deduct the net operating losses sustained by their corporation during those years in preparing their individual returns. Int.Rev.Code of 1954, § 1374. On the other hand, if these advances are to be considered as creating a class of stock, as the Government contends, the corporation did not qualify for Subchapter S treatment, and its losses were not directly deductible by taxpayers as if the corporation were organized as a partnership. Int.Rev.Code of 1954, § 1371(a) (4).

This is a tax refund suit brought by taxpayers [1] against the District Director of Internal Revenue for the State of Alabama in part [2] to recover income taxes assessed against them and collected by the Commissioner of Internal Revenue for the taxable years 1961 and 1962. The case was submitted to the District Court for a judgment on the pleadings, the pretrial order, a stipulation as to facts and documents, and the briefs filed by the parties. On the basis of the stipulated facts, the District Court agreed with taxpayers' contentions regarding certain deductions they had claimed in their returns for the years 1961 and 1962 and ordered a refund to the extent of these deductions. From this judgment the Government appeals.[3]

During the years 1961 and 1962, taxpayers were shareholders in WFLI, Inc., a Tennessee corporation organized in 1959 to construct and operate a radio station in Chattanooga, Tennessee. In their income tax returns for these years, taxpayers deducted from their gross incomes amounts equal to their pro rata shares of the net operating losses sustained by WFLI in 1961 and 1962. They computed their tax liabilities in reliance upon section 1374 of the Internal Revenue Code of 1954. This section, part of Subchapter S, provides that shareholders of a "small business corporation," as defined in section 1371(a) of the Code, are entitled (provided the corporation elects to be taxed under the provisions of Subchapter S) to deduct from their gross incomes an amount equal to their portion of the corporation's net operating losses for the taxable year. The Commissioner determined that taxpayers were not entitled to the section 1374 deductions on the ground that WFLI was not a "small business corporation" within the meaning of section 1371(a) and was not, therefore, eligible to elect to be taxed under Subchapter S. He based this determination upon his finding that the corporation had more than one class of stock as a result of certain cash advances taxpayers had made to it and thus did not come within the statutory definition of a "small business corporation." Int. Rev.Code of 1954, § 1371(a) (4). Accordingly, he found deficiencies in taxpayers' reported tax liabilities for the years here in issue. Taxpayers paid the deficiencies and made refund claims asserting that the Commissioner's determination was erroneous. This suit fol-

---

1. The original plaintiffs were William J. Brennan and his wife, Frances U. Brennan, and William E. Benns, Sr. and his wife, Iralee W. Benns. While the case was pending in the District Court, the two men died, and their wives were substituted for them as parties. In this opinion, "taxpayers" refer to Iralee W. Benns and William J. Brennan, the shareholders of record in WFLI, Inc.

2. Both taxpayers were shareholders in WFLI, Inc. William J. Brennan and his wife also sought a refund for the taxable years 1960, 1961 and 1962 on the ground that the Commissioner had erroneously disallowed them deductions in those years for the Brennans' pro rata share of the net operating losses of Selma Television, Inc. The Commissioner had disallowed these deductions because he determined that Selma Television had not made a timely election under Subchapter S.

3. The District Court, in addition to finding that WFLI qualified for Subchapter S treatment, also found that Selma Television's election had been untimely. Accordingly, he denied a refund to the Brennans to that extent. Frances U. Brennan has not appealed from this determination, and it is not affected by our decision with respect to the claims related to WFLI.

lowed the Commissioner's disallowance of taxpayers' claims.

The stipulation upon which the District Court concluded that the Commissioner had erred regarding the eligibility of WFLI for Subchapter S treatment was prepared by the parties in light of Treas.Reg. § 1.1371–1(g) (1960). This regulation, at the time the stipulation was made, read in part as follows:

" * * * A corporation having more than one class of stock does not qualify as a small business corporation. In determining whether a corporation has more than one class of stock, only stock which is issued and outstanding is considered. * * * If the outstanding shares of stock of the corporation are not identical with respect to the rights and interest which they convey in the control, profits, and assets of the corporation, then the corporation is considered to have more than one class of stock. * * * *If an instrument purporting to be a debt obligation is actually stock, it will constitute a second class of stock.*"

(Emphasis added.) The parties stipulated, among other facts, that

(1) WFLI was incorporated in 1959 with an initial capitalization of $1,000.

(2) The corporation was initially capitalized through the issuance of 100 shares of stock having a par value of $10 per share to the following individuals:

| Iralee W. Benns | 45 shares |
| James G. Stelzenmuller, Jr. | 25 shares |
| Cyril G. Brennan | 25 shares |
| T. Julian Skinner, Jr. | 5 shares |

(3) Cyril G. Brennan was William J. Brennan's brother, while Skinner was Iralee W. Benns' nephew.

(4) On February 15, 1960, William J. Brennan bought the 25 shares of stock issued to Stelzenmuller.

(5) On September 8, 1961, William E. Benns, Jr. bought 10 shares of WFLI stock from his mother, Iralee W. Benns. After this transaction, the issued common stock of WFLI was owned as follows:

| Iralee W. Benns | 35 shares |
| William J. Brennan | 25 shares |
| Cyril G. Brennan | 25 shares |
| T. Julian Skinner, Jr. | 5 shares |
| William E. Benns, Jr. | 10 shares |

(6) During the years 1959–1961, the Brennan brothers and Iralee W. Benns advanced to WFLI as payment for the common stock issued to them and as "equity capital" the following amounts:

| | Payment for stock | Advanced as "equity cap." |
|---|---|---|
| Iralee W. Benns | $450 | $34,550 |
| William J. Brennan | $250 | $55,990 |
| Cyril G. Brennan | $250 | $10,110 |

(7) During the period from April 12, 1960, through April 5, 1962, William E. Benns, Jr. advanced $24,335.01 to WFLI. Of the total amount advanced, $15,890.01 became "equity capital" on September 8, 1961, when Benns, Jr. became a WFLI shareholder. The remaining $8,445 advanced became "equity capital" on the dates the advances were made.

(8) The amounts designated as advances of "equity capital" constituted "equity capital within the meaning of the decided tax cases which hold that interest payments made by a thinly capitalized corporation on loans from its shareholders constitute dividends for income tax purposes."

(9) This "equity capital" was carried on WFLI's books as debts of the corporation which were owed to its shareholders. The parties did not stipulate as to the existence of debt instruments of any kind which were evidence of these advances, and no such instruments were introduced.

Before the District Judge issued his determination on whether the advances made to WFLI as "equity capital" are to be treated as a class of stock in the corporation, Treas.Reg. § 1.1371–1(g)

was amended to have retroactive effect as follows:

"* * * ~~If an instrument purporting to be a debt obligation is actually stock, it will constitute a second class of stock.~~ *Obligations which purport to represent debt but which actually represent equity capital will generally constitute a second class of stock. However, if such purported debt obligations are owned solely by the owners of the nominal stock in substantially the same proportion as they own such nominal stock, such purported debt obligations will be treated as contributions to capital rather than a second class of stock.* * * * "     .

(Omitted matter is lined through; new matter is shown in italics.) Taxpayers did not make their advances to WFLI in exact proportion to their holdings of the issued WFLI stock. Although no finding was made in the District Court regarding whether the advances were made in "substantially the same proportion" as taxpayers held the issued stock, the Government's position under the regulation, both before and after it was amended, is that the "equity capital" taxpayers advanced constituted a "second class of stock" which disqualified WFLI for Subchapter S treatment. The Government argues that, in any event, the amended regulation controls this case. Taxpayers, in sharp disagreement with the Government regarding the effect of the amendment upon this case, contend that WFLI did not have more than one "class of stock" under the unamended regulation because, with evidence of "debt instruments" lacking, the obligations owed by WFLI to taxpayers and the other shareholders were not "actually stock."

We are of the opinion that the issue of whether taxpayers' advances to WFLI are to be treated as a class of stock in WFLI distinct from the common stock outstanding should be decided upon the basis of a factual record made in light of Treas.Reg. § 1.1371–1(g), as amended since the stipulation in this case was prepared. Accordingly, we vacate the judg-

ment appealed from and remand the case for further proceedings.

A prime purpose of the Federal Rules of Civil Procedure is, of course, to expedite the just disposition of cases and reduce the costs of litigation. Fed.R.Civ. P. 1. Rule 16 establishes machinery for the achievement of that purpose. Fed. R.Civ.P. 16. In a pretrial conference conducted under Rule 16, the contested issues may be defined and simplified, surprise at trial and the risk of judicial error may be lessened, and some of the burdensome rules of evidence may be avoided through the conclusion of stipulations on matters of evidence. *See generally* 3 Moore, Federal Practice ¶ 16.02 (2d ed. 1968). To safeguard the savings in time and money achieved by means of a pretrial conference, Rule 16 provides that the pretrial order growing out of the conference "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." In Central Distributors, Inc. v. M. E. T., Inc., 5 Cir., 1968, 403 F.2d 943. 945, this Court observed:

"* * * It has been suggested that proper treatment of the pre-trial order after entry requires an appropriate balance between firmness to preserve the essential integrity of the order, and adaptability to meet changed or newly discovered conditions or to respond to the special demands of justice.

"The position of this Court was clearly stated in Laird v. Air Carrier Engine Service, 5 Cir. 1959, 263 F.2d 948, 953 [:] * * * the court has an *obligation* [emphasis ours], in addition to having the right, to relieve counsel of pre-trial stipulations where such relief is necessary to prevent manifest injustice. * * * " (Footnote omitted.)

In this case, we conclude that the amendment of Treas.Reg. § 1.1371–1 (g) requires, because of considerations of fairness to taxpayers and of sound judicial administration, that the judgment of the District Court, insofar as it is based upon that Court's conclusion

that WFLI had not more than one class of stock, must be vacated. By their stipulation that the advances made to WFLI constituted "equity capital" for tax purposes, taxpayers conceded in the trial court that these advances were not true loans. If these advances were not loans for the purpose of determining whether WFLI had any classes of stock other than the $10 par value stock, they were either a second class of stock within the contemplation of section 1371(a) (4) or some form of surplus that was not a class of stock within the contemplation of the section. In tax refund cases, the burden is on the taxpayer to prove that the Commissioner erroneously determined his tax liability, whether through an error of law or of fact. *E. g.*, American National Bank of Austin v. United States, 5 Cir., 1970, 421 F.2d 442, 451; Cummings v. Commissioner of Internal Revenue, 5 Cir., 1969, 410 F.2d 675, 679. Taxpayers in this case contended in the District Court that WFLI did not have more than one class of stock within the meaning of section 1371(a) (4) and the unamended regulation because there were no *instruments* purporting to be debt obligations that WFLI owed to its shareholders; that is, taxpayers set out to prove that the advances were not "actually stock" by showing that no debt instruments existed, but did not attempt to show what, for tax purposes, the advances, admittedly not true loans for some tax purposes, actually were. Alternatively, taxpayers attacked the unamended regulation as being unauthorized and in derogation of the basic statute. A comparative reading of the original and amended regulations suggests that, while taxpayers might well have contested the validity of the amended regulation had it been in effect when this litigation began, they probably would not have relied upon the absence of proof that debt *instruments* existed, because the amendment substitutes the concept of *obligations* for that of *instruments*. We refrain from reaching the issue of the amended regulation's validity in a case where resolution of this issue might prove to be unnecessary upon a redevelopment of the factual record. At the same time, considerations of fairness to taxpayers require that we relieve them from the effects of their stipulation that their advances to WFLI constituted "equity capital" for the purposes of this case.

The judgment appealed from is vacated, and the case is remanded.