Frances U. BRENNAN, as Executrix of the Last Will and Testament of William J. Brennan, deceased, et al., Plaintiffs,

v.

A. J. O'DONNELL, District Director of Internal Revenue, Defendant.

Civ. A. No. 66–80.

United States District Court,
N. D. Alabama, S. D.

Feb. 3, 1971.

**1070**

C. V. Stelzenmuller, Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for plaintiffs.

Wayman G. Sherrer, U. S. Atty., Birmingham, Ala., Jack Warren, Asst. U. S. Atty., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF DECISION

POINTER, District Judge.

The sole issue is whether certain funds contributed to a corporation by its stockholders should be treated as giving rise to a second class of stock within the meaning of I.R.C. § 1371(a) (4)[1], thereby making it ineligible for treatment under subchapter S.[2] An earlier decision of this court [68–1 USTC ¶ 9314], holding such advances not to be a second class of stock, was vacated on appeal and the cause remanded for further proceedings, 426 F.2d 218 (5th Cir. 1970).

In a detailed stipulation entered into on November 29, 1966, the parties agreed that the advances in question constituted "equity capital within the meaning of the decided tax cases which hold that interest payments made by a thinly capitalized corporation on loans from its shareholders constitute dividends for income tax purposes." The amounts, though so advanced, were carried on the corporation's records as debts owed to the stockholders and were so shown on the corporate income tax returns. It did not appear that there were any instruments to evidence these advances.

At the time the stipulation was agreed to the pertinent treasury regulations [Reg. § 1.1371–1(g)] read as follows:

> In determining whether a corporation has more than one class of stock, only stock which is issued and outstanding is considered. * * * If the outstanding shares of stock of the corporation are not identical with respect to the rights and interest which they convey in the control, profits, and assets of the corporation, then the corporation is considered to have more than one class of stock. Thus, a difference as to voting rights, dividend rights, or liquidation preferences of outstanding stock will disqualify a corporation. * * * *If an instrument purporting to be a debt obligation is actually stock, it will constitute a second class of stock.*

These regulations had, however, been held to be invalid extensions of the statutes. W. C. Gamman, 46 T.C. 1 (1966) (Dec. 27,900); Lewis Building & Supplies, Inc., 25 TCM 844 (1966) (Dec. 28,031[M]). The defect in the regulations, according to these opinions of the Tax Court, lay in the declaration that stock disguised as debt must necessarily and *per se* be a second class of stock regardless of the practical effect.

In an effort to overcome these objections, the Treasury Department amended [3] the regulations, deleting the

---

1. "[T]he term 'small business corporation' means a domestic corporation * * * which does not * * * (4) have more than one class of stock." I.R.C. § 1371 (a).

2. I.R.C. §§ 1371–1379.

3. T.D. 6904, 1967–1 C.B. 219. Appeals in *Gamman* and *Lewis Building* were dismissed in January 1967, following announcement of this tactical change.

sentence shown above in italics and substituting in lieu thereof the following provisions:

Obligations which purport to represent debt but which actually represent equity capital will generally constitute a second class of stock. However, if such purported debt obligations are owned solely by the owners of the nominal stock of the corporation in substantially the same proportion as they own such nominal stock, such purported debt obligations will be treated as contributions to capital rather than a second class of stock. But, if an issuance, redemption, sale, or other transfer of nominal stock, or of purported debt obligations which actually represent equity capital, results in a change in a shareholder's proportionate share of nominal stock or his proportionate share of such purported debt, a new determination shall be made as to whether the corporation has more than one class of stock as of the time of such change.

This change, made less than thirty days following the stipulation in the case at bar, not only sought to escape *Gamman* (by providing that stock disguised as debt will only "generally" constitute a second class of stock), but also eliminated any requirement for an *instrument* to evidence the purported debt and also conditioned applicability of the regulations in words of "equity capital," the very words agreed to by the taxpayers in the present case in their stipulation.

Finding the facts to be as stipulated by the parties, this court concluded that, "looking to the realities of the situation," these advances did not have the effect of a second class of stock. [68–1 USTC ¶ 9314]. The cause is here again, after an appeal to the Fifth Circuit, to assure a record made in the light of the amended regulations—to avoid the possible argument by the taxpayers that they had been tricked into a stipulation, only to find the ground rules thereafter modified to eliminate one of their principal defenses. A careful reading of Judge Ainsworth's opinion 426 F.2d 218, makes it clear that the Court of Appeals has not, in vacating the earlier order of this court, expressed its approval or disapproval of the amended regulations.[4]

The parties have resubmitted this cause to the court for decision upon the same stipulations previously before the court.[5] They have also agreed that they know of no other facts that are material on the question of whether there was more than one class of stock—which is tantamount to a stipulation that there are no instruments to evidence the advances by the stockholders to the corporation. The court does hereby find the facts to be as stipulated by the parties, together with the inferences therefrom which the court has drawn and which are contained in this memorandum.

Several cases have been before the courts since amendment of the regulations. The decisions are consistent in refusing to apply the regulations in a manner to invalidate subchapter S elections.

August F. Nielsen Co., T.C. Memo. 1968–11, 27 TCM 44 (1968). Notes held by two stockholders had become, by reason of variation in repayments and by reason of transfers of some shares of stock, disproportionate to the "nominal" stockholdings. The notes were held not to represent true indebtedness, but rather an equity interest. Judge Atkins noted that the regulations did not specifically require that purported debt be a second class of stock in *every* instance when not proportionate to the stockholdings, and accordingly, without invalidating the regulations, simply held that the notes under the circumstances should not be treated as a second class of stock.

---

4. But cf. reference, 715A CCH Standard Federal Tax Reporter ¶ 4848.22.

5. These stipulations, reported in full in 68–1 USTC ¶ 9314, will not be repeated here.

Milton T. Raynor, 50 T.C. 762 (1968) (Dec. 29,103). Advances were not represented by notes or other instruments, but were shown on the corporate books as loans payable to stockholders. The amounts were not proportionate to the stockholdings, but the Tax Court found that there was an agreement—an "informal partnership arrangement"—to make any such advances proportionate to their formal stockholdings. By finding such an arrangement, the Tax Court was able to rule against there being a second class of stock without having to invalidate the regulations.

Portage Plastics Co. Inc. v. United States, D. C., 301 F.Supp. 684 (W.D. Wis.1969). Advances were contributions to capital rather than loans. Though not proportionate to formal stockholdings, they did not constitute a disqualifying second class of stock. Judge Doyle concluded that the new regulations were not controlling and that the question should be resolved in terms of the two conceivable purposes for the one-class-of-stock requirement: (1) limiting benefits of subchapter S to "small" or relatively simple corporations which were comparable to partnerships and proprietorships; and (2) preventing administrative complexities in allocation of earnings or losses among stockholders. To find these purposes, Judge Doyle looked to the 1954 committee reports (when a similar proposal was being considered) and the 1964 reports (when amendments to subchapter S were considered). S.Rep. No. 1622, 83d Cong.2d Sess. 119, 453–454 (1954); S.Rep. No. 830, 88th Cong.2d Sess. 146 (1964).

James L. Stinnett Jr.,[6] 54 T.C. 221 (1970) (Dec. 29,955). A majority of the Tax Court held invalid the revised regulations to the extent they insist debt-equity be a disqualifying second class of stock if "disproportionate." The principal opinion by Judge Quealy

emphasizes that the statutory framework makes provision for debts owing to stockholders, treating the same as an equity interest in any event [I.R.C. § 1376(b) (2)]. That there may be a disproportionate entitlement to assets on liquidation is not enough, according to the decision, to produce a second class of stock for purposes of § 1371.

H. R. Spinner Corp.,[6] T.C. Memo. 1970–99, 29 TCM 462 (1970). Followed *Stinnett*, saying "we held there that ordinary debt instruments, held disproportionately by the shareholders of a thinly capitalized corporation, did not constitute a second class of stock within the meaning of section 1371(a)."

Amory Cotton Oil Co. v. United States (N.D.Miss. Dec. 28, 1970). Judge Smith, citing with approval *Gamman, Stinnett* and *Portage Plastics*, concluded that the revised regulations were invalid, and that the advances made by the stockholders, though disproportionate, did not give rise to a disqualifying second class of stock for purposes of subchapter S.

■ This court is persuaded that the reasoning in the above cases is sound— to the extent the regulations insist that disproportionately held debt-equity disqualify a corporation from subchapter S treatment, they have overreached the statute and are invalid. This is not, of course, to say that debt-equity interests can never constitute a second class of stock—there well may be situations where such a conclusion is justified on a consideration of their impact on actual voting rights, dividend rights, and liquidation rights. But such a conclusion will not arise merely upon a determination that they are not held in "substantially the same proportion" as the formal stockholdings.

■ WFLI Inc., the corporation in question in this proceeding, was incorporated in May 1959. For the following

6. Presently on appeal to Court of Appeals for Ninth Circuit.

two years—on virtually a monthly basis —additional funds were required either to pay the contractor for construction of a radio station or, after the station had gone on the air in February 1961, to cover initial operating deficits. Iralee Benns and her son, William Benns, who during the period owned 45 shares of stock, together contributed some $58,885, while William J. Brennan and his brother Cyril G. Brennan, who owned 50 shares, together contributed $66,100. These amounts were entered on ledger cards kept in their separate names by the corporation, and shown on tax returns of the corporation as amounts owing to stockholders. There were no notes or other instruments to evidence these transactions, and in effect these amounts were risk capital contributed by the stockholders towards the long-range success of the endeavor.

The amounts were contributed by members of the two families who controlled WFLI Inc. in substantially the same proportion as their relative stock holdings in the corporation. It does not appear that the characterization of part of their equity contributions as "debts" was motivated by tax avoidance reasons, as might have been the case had there been accumulated earnings and profits. *Cf.* Portage Plastics Co., Inc. v. United States, 301 F.Supp. 684. Indeed, the parties stipulated to the stockholders' expectation of initial operating losses as the reason for electing subchapter S treatment—and in such a case amounts loaned to the corporation by stockholders would, in effect, be treated by statute in like manner as nominal stock. See I.R. C. §§ 1374(c) (2) (B), 1376(b) (2).

While these advances may create a slight variation in the liquidation interests of the two families of stockholders from that which is reflected by their stock interests, this is hardly justification (even giving weight to the pre-sumptions attending tax determinations by the Commissioner) for disqualifying this corporation from the tax treatment provided by Congress in Subchapter S. It is a very simple matter here to calculate the pass-through of corporate losses, and, indeed, to suggest that each time additional funds were needed by the corporation the stockholders should have undergone a recapitalization rather than simply make a contribution to capital is hardly consonant with the goal of eliminating administrative complexities. Moreover, a stated purpose for passage of subchapter S was to encourage the selection of business forms for reasons other than tax consequences—a purpose which will certainly be frustrated by a policy which prevents owners from putting new capital directly into their businesses once they have selected the corporate form. See S.Rep. No. 1983, 85th Cong.2d Sess., 87 (1958). Indeed, one may well expect that future legislation in the subchapter S area will produce some relaxation of eligibility requirements, rather than restriction. See Pennell, "Subchapter S—The Need for Legislation," Vol. 24, No. 2, The Tax Lawyer, Winter 1971, p. 249 et seq.

The treasury department has recently been given expanded power to prescribe regulations in the debt-equity situation. Section 415(a) of the Tax Reform Act of 1969, P.L. 91–172, 83 Stat. 487, adding I.R.C. § 385. Regulations have not yet been proposed under such section, and it seems clear that Reg. § 1.1371–1(g) has not itself received a transfusion merely by the passage of new § 385.[7]

It is the conclusion of this court that the advances in question to WFLI Inc. did not give rise to a second class of stock within the meaning of I.R.C. § 1371(a) (4) and that, accordingly, the income tax treatment of WFLI Inc. and its stockholders for the years 1961 and

---

7. It remains to be seen whether the Treasury Department will attempt to use its powers under I.R.C. § 385 to define when there is more than one class of stock.

One may also expect ultimately a challenge to § 385 as being an unconstitutional delegation of legislative powers.

1962 is governed by the provisions of subchapter S, chapter 1, of the Internal Revenue Code. A final judgment in accordance with this opinion will now be prepared by the parties and presented for entry.