**SHORES REALTY COMPANY, INC.,**
Plaintiff-Appellee,

v.

**UNITED STATES of America,**
Defendant-Appellant.

No. 71-2198.

United States Court of Appeals,
Fifth Circuit.

Oct. 24, 1972.

Robert W. Rust, U. S. Atty., Clemens Hagglund, Asst. U. S. Atty., Miami, Fla., Johnnie M. Walters, Asst. Atty. Gen.,

Meyer Rothwacks, Atty., Dept. of Justice, Tax Div., Washington, D. C., Robert W. Rust; U. S. Atty., Miami, Fla., Fred B. Ugast, Act. Asst. Atty. Gen., Thomas L. Stapleton, Ann E. Belanger, William L. Goldman, Attys., Dept. of Justice, Tax Div., Washington, D. C., for defendant-appellant.

George G. Graham, Miami, Fla., for plaintiff-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Disposition of this appeal requires that we determine the validity of Treasury Regulations § 1.1371–1(g), as amended,[1] interpreting the "one class of stock" criterion embodied in Section 1371(a)(4), Title 26, United States Code.[2] We expressly reserved decision as to this point in Brennan v. O'Donnell, 5 Cir. 1970, 426 F.2d 218. The "one class of stock" criterion must be satisfied in order for a corporate taxpayer to qualify for favorable tax treatment as a "small business corporation" under Subchapter S of the Internal Revenue Code of 1954, as amended.[3] In this action for a refund of corporate income taxes paid, the district court impliedly[4] found § 1.1371–1(g) to be in excess of the authority granted to the Commissioner of Internal Revenue and entered judgment for the taxpayer. On this appeal by the United States we affirm the judgment of the district court.

## I. THE FACTS

Shores Realty Company (the taxpayer) was incorporated in the State of Florida on February 6, 1960, for the purpose of developing real estate for sales. Its total capitalization was $600.00, consisting of 600 shares of one dollar par value com-

---

1. Treasury Regulations § 1.1371–1(g), in pertinent part, reads:

". . . Obligations which purport to represent debt but which actually represent equity capital will generally constitute a second class of stock. However, if such purported debt obligations are owned solely by the owners of the nominal stock of the corporation in substantially the same proportions as they own such nominal stock, such purported debt obligations will be treated as contributions to capital rather than a second class of stock. But, if an issuance, redemption, sale, or other transfer of nominal stock, or of purported debt obligations, which actually represent equity capital, results in a change in a shareholder's proportionate share of nominal stock or his proportionate share of such purported debt, a new determination shall be made as to whether the corporation has more than one class of stock as of the time of such change."

2. Title 26, U.S.C., § 1371(a)(4):

"Small business corporation.—For purposes of this subchapter, the term 'small business corporation' means a domestic corporation which is not a member of an affiliated group (as defined in section 1504) and which does not—

\*　　\*　　\*　　\*　　\*

(4) have more than one class of stock."

3. A corporate taxpayer found eligible for treatment as a "small business corporation" under Subchapter S of the Internal Revenue Code is relieved of the obligation of paying corporate income taxes. Instead, income received by the corporation is attributed directly to the corporation's stockholders, even if the corporation does not distribute its earnings to the stockholders in the form of money or property. Related provisions exist for the attribution of corporate losses to the stockholders.

4. By its Conclusion of Law No. 2:

"The advances made by the shareholders to the taxpayer did not constitute a second class of stock so as to disqualify plaintiff from obtaining treatment as a Subchapter S 'small business corporation' for federal tax purposes. James L. Stinnett, Jr. v. Commissioner, 54 T.C. 221 (1970); H. R. Spinner Corp. v. Commissioner, 29 TCM 462, CCH Dec. 30,083 (M), TC Memo 1970–99. On the facts of this case, to hold otherwise would defeat the intent of Congress regarding the tax liabilities of small business corporations."

mon stock which was, at all times relevant to this case, held as follows:

| Stockholders | Shares |
| --- | --- |
| Raymond V. Guernsey | 150 |
| Mary P. Guernsey | 150 |
| Emerson D. Wertz | 150 |
| Berle Wertz | 150 |

Both the Guernseys and the Wertzes are husband and wife.

To start the corporate business, the taxpayer purchased a parcel of undeveloped land for a total price of $32,000.00. The taxpayer paid approximately $9,200.00 in cash. An outstanding mortgage was assumed and another was executed to cover the balance of the purchase price. Funds for the purchase of this property and for the anticipated development costs thereof were provided to the taxpayer by a series of advances from Raymond V. Guernsey and Emerson D. Wertz, commencing on March 18, 1960. Additional advances were made by the Guernsey Investment Corporation and the Guernsey Realty Corporation, both of which were owned by the Guernseys. These advances were carried on the taxpayer's books as loans and on January 1, 1962, demand notes were issued to Emerson D. Wertz ($30,000.00), Raymond V. Guernsey ($11,000.00), and Guernsey Investment Company, Inc. ($17,000.00). The notes provided for interest at the rate of six percent annually and were unsecured.

The taxpayer filed federal "small business corporation" income tax returns for the fiscal years ending January 31, 1962, 1963, and 1964. No taxes were shown due or paid on those returns. Acting under the authority of Treasury Regulations § 1.1371–1(g), the Commissioner of Internal Revenue determined that, for tax purposes, the loans to the corporation in fact constituted equity capital and a second class of stock, thereby disqualifying the taxpayer from treatment under Subchapter S. The taxpayer paid the asserted deficiencies, plus interest, and brought suit in the district court for a refund.

## II. THE DECISION BELOW

Following a non-jury trial, the district court made findings of fact and conclusions of law. The following factual findings are relevant to the issue presented on this appeal:

"16. For the purpose of determining whether the taxpayer had more than one class of stock within the contemplation of 26 U.S.C. § 1371(a)(4), the advances involved were true and bona fide indebtedness.

"17. If not true and bona fide indebtedness, they were some form of surplus that is not a class of stock within the contemplation of 26 U.S.C. § 1371(a)(4).

"18. In either case, the taxpayer had only one class of stock for the purposes of treatment as a small business Corporation under Subchapter S of the Internal Revenue Code."

The district court concluded as more fully set out by Note 4, supra, that the advances made to taxpayer by its shareholders did not constitute a second class of stock so as to disqualify the taxpayers from obtaining tax treatment as a Subchapter S "small business corporation", asserting that to hold otherwise would defeat the intent of Congress regarding the tax liabilities of small business corporations.

## III. CONTENTIONS ON APPEAL

The United States urges us to reverse the judgment of the district court on two grounds: (1) the district court allegedly erred in finding that the advances to the corporate taxpayer in question were true indebtedness for purposes of Title 26, U.S.C., § 1371(a)(4); and (2) contrary to the implicit holding of the district court, Treasury Regulations § 1.1371–1 (g) properly provides that purported debt obligations which actually represent equity capital will constitute a second class of stock unless held in the same proportion as the nominal stock.

In reply, the taxpayer asks us to affirm the judgment of the court below for essentially two reasons: (1) the advances in question were true indebtedness for purposes of Title 26, U.S.C., § 1371(a)(4); and (2) Treasury Regulations § 1.1371–1(g) injects the irrelevant test of proportionality into the evaluation of the taxpayer's eligibility for treatment as a "small business corporation" under Subchapter S.

Before addressing ourselves to the merits of these contentions, we believe it appropriate first to review the development of the "one class of stock" requirement and of the present version of Treasury Regulations § 1.1371–1(g).

## IV. THE "ONE CLASS OF STOCK" REQUIREMENT

Subchapter S of the Internal Revenue Code was enacted by means of Public Law 85–866, Title I, § 64(a), 72 Stat. 1650 (September 2, 1958). The only discussion of the "one class of stock" requirement which preceded the enactment of Subchapter S appeared in Senate Report No. 1622, Second Session, pp. 453–454:

> "The corporation may have only one class of stock outstanding. No class of stock may be preferred over another as to either dividends, distributions, or voting rights. If this requirement were not made, undistributed current earnings could not be taxed to the shareholders without great complications. In a year when preferred stock dividends were paid in an amount exceeding the corporation's current earnings, it would be possible for preferred shareholders to receive income previously taxed to common shareholders, and the same earnings would be taxed twice unless a deduction for the earnings previously taxed were allowed to the common shareholders. Such an adjustment, however, would be extremely difficult where there had been a transfer of common stock in the interim." (1954 U.S.Code Congressional & Administrative News, pp. 4621, 5097)

The available legislative history regarding the "one class of stock" requirement indicates that Congress had two related objectives in mind: (1) the prevention of double taxation of earnings received by a "small business corporation"; and (2) the avoidance of complex adjustments made necessary by instances of such double taxation. It appears, therefore, that Congress did not address itself to the impact of extensive debt financing of a "small business corporation" by its nominal stockholders upon such a corporation's eligibility for favorable Subchapter S tax treatment. Congress did envision the infusion of borrowed funds or property into a "small business corporation" from its nominal stockholders because it enacted Title 26, U.S.C., § 1376(b)(2), which provides for the reduction in basis of indebtedness owing to a shareholder in the event a corporation experiences a net operating loss for any taxable year.

## V. THE EVOLUTION OF THE TREASURY'S INTERPRETATION

Prior to 1966, Treasury Regulations § 1.1371–1(g) stipulated that " . . . if an instrument purporting to be a debt obligation is actually stock, it will constitute a second class of stock". In W. C. Gamman v. Commissioner, 1966, 46 T.C. 1, the United States Tax Court held that where the debt obligations were in the same proportion as the stock as to face amount and ownership, there was no second class of stock which would disqualify a taxpayer from Subchapter S treatment. The Commissioner of Internal Revenue acquiesced in the *Gamman* holding and subsequently amended § 1.1371–1(g) by deleting the above quoted language and by substituting therefore the language which is set out in Note 1, supra. As presently written, § 1.1371–1(g) seeks to apply two separate tests to a corporation's financial structure with regard to its eligibility for Subchapter S treatment: (1) do obligations which purport to represent debt actually represent equity capital?, and (2) if the answer to test (1)

is in the affirmative, then are such obligations held by the corporation's nominal stockholders proportionate in face amount and ownership to the nominal stock ownership of the corporation? If the answer to test (2) is in the negative, the corporation, according to § 1.1371–1 (g) fails to qualify for Subchapter S treatment.

The Tax Court, in James L. Stinnett, Jr. v. Commissioner, 1970, 54 T.C. 221, (relied upon by the district court in this case), held the amended § 1.1371–1 (g) invalid, noting:

> "We do not regard as controlling with respect to the question whether there is more than one class of stock within the meaning of section 1371(a) the fact that 'debt' characterized as 'equity' capital may be disproportionate to the respective common stock interests of the stockholders. Accordingly, we must hold the regulation invalid as applied to this case. To hold otherwise not only would serve largely to defeat the purpose for which Congress enacted subchapter S, but would be inconsistent with the underlying scheme of the statute as exemplified by section 1376(b)(2)." 54 T.C. at 230.

The *Stinnett* holding was adhered to in the subsequent case of H. R. Spinner Corporation v. Commissioner, TC Memo 1970–99 (also cited by the court below):

> "We held there" (in Stinnett) "that ordinary debt instruments, held disproportionately by the shareholders of a thinly-capitalized corporation, did

not constitute a second class of stock within the meaning of section 1371(a) . . . ."5

## VI. THE APPLICABILITY OF THE DEBT-EQUITY ANALYSIS

■ Following the first test of Treasury Regulations § 1.1371–1(g), the district court found that the advances made to the taxpayer in this case "were true and bona fide indebtedness". We find it unnecessary to inquire into the evidentiary basis for that determination because we believe that the "debt-equity" analysis frequently employed in income tax cases is not applicable to this case.

The United States accurately points out that the manner in which a corporation is financed in terms of the relationship between equity capital and purported debt capital has long been a legitimate focal point in determining income tax liability. For example, the fact that a corporate taxpayer is "thinly capitalized" (i. e., with equity capital disproportionately "thin" as compared to large contributions in the form of debt) may well have a bearing upon the characterization of an item as a "bad debt" or an "ordinary loss", Curry v. United States, 5 Cir. 1968, 396 F.2d 630, or upon the deductibility of claimed interest payments, Tomlinson v. 1661 Corp., 5 Cir. 1967, 377 F.2d 291. This Circuit has gone to great lengths to isolate and identify the factors which may have a bearing upon the "debt versus equity" characterization problem, Montclair, Inc. v. Commissioner, 5 Cir. 1963, 318 F.2d 38, 40.

5. Both the *Stinnett* and *Spinner* decisions of the Tax Court have been appealed by the United States to the Ninth Circuit. Treasury Regulations § 1.1371–1(g) has also been held invalid in the following cases which are currently on appeal: Portage Plastics Co. v. United States, W.D.Wis.1969, 301 F.Supp. 684, and Amory Cotton Oil Co. v. United States, N.D.Miss.1971, 320 F.Supp. 951.

The Seventh Circuit on July 18, 1972, reversed Portage Plastics, 470 F.2d 308, with Judge Cummings filing a strong dissent. We are now advised that en banc rehearing has been granted in that case.

Another panel of this Court has today affirmed the decision in *Amory Cotton Oil*. Employing somewhat different reasoning, that panel also holds Regulation Section 1.1371–1(g) invalid both facially and as there applied. Amory Cotton Oil Co. v. United States, 5 Cir. 1972, 468 F.2d 1046 [Decided October 24, 1972].

The United States' failure to file a timely notice of appeal has barred it from seeking review of the decision in Brennan v. O'Donnell, N.D.Ala.1971, 322 F.Supp. 1069, which also held § 1.1371–1(g) invalid, following our remand in 426 F.2d 218 (1970).

Nevertheless the fact remains that the underlying statute, Title 26, U.S.C. § 1371(a)(4) does not speak in terms of "capital". It makes reference only to "stock". In addition, the legislative history of the "one class of stock" criterion does not reflect any legislative concern with the "debt versus equity" capitalization problem; that history appears to dwell exclusively upon possible conflicts of interest between the holders of different classes of stock in a "small business corporation".

With this background in mind, we perceive no basis in law for the Commissioner's attempt to inject the "debt versus equity" analysis into the application of the "one class of stock" requirement. Subchapter S manifests no attention to the manner in which a "small business corporation" is capitalized in terms of how funds or property are furnished to that entity. Its provisions merely endeavor to minimize conflicts of interest between the various parties to such a corporation. We conclude that the legislative use of the term "stock" foreclosed the Commissioner from granting to or withholding from a taxpayer favorable Subchapter S income tax treatment on the basis of that taxpayer's capital structure (i. e., debt versus equity).[6]

## VII. THE PROPORTIONALITY CRITERION

■ Assuming arguendo that the "debt versus equity" inquiry authorized by Treasury Regulations § 1.1371–1(g) is an appropriate one under Title 26, U.S.C., § 1371(a)(4), we must next consider the validity of the Regulation's "proportionality" standard. The arguments supporting the "proportionality" criterion are succinctly set forth in the United States' brief in this case.

"Corporate obligations that have been recharacterized as equity for tax purposes are really nothing more than preferred stock. Since the purported interest payments are treated as dividends for tax purposes, the holders of these obligations share in the corporation's earnings and profits. They also have liquidation rights. And, as is generally true with preferred stock, they do not have voting rights.

"Moreover, when these obligations are held disproportionately to the common stock, they carry a preference over the common stock with respect to dividends and liquidation rights. And, by the same token, the common stock carries a preference with respect to voting rights.

"Since these corporate obligations convey certain rights associated with stock ownership (dividend, liquidation) in preference over the disproportionately held common stock, and vice versa (voting rights), the Report of the Senate Finance Committee clearly shows a Congressional intention that the obligations be treated as a second class of stock. The regulation in issue, is at the very least not 'plainly inconsistent' with the statute, which is all that is needed to sustain its validity." (Brief for the Appellant, pp. 20–21)

It is apparent from this exposition that the appellant, in urging that the judgment of the district court be reversed, is asking us to embrace three distinct premises: (1) in a "thinly capitalized" corporation, purported debt obligations constitute equity; (2) this equity generally constitutes a second class of stock; and (3) this equity will not constitute a second class of stock (i. e., will be characterized as "contributions to capital") if held proportionately as to ownership and amount to the nominal stock of the corporation. We have earlier indicated our disagreement with premises (1) and (2). We disagree with premise (3) because we find no

---

**6.** The *Amory Cotton Oil* panel, see footnote 5 supra, on the other hand holds that debt-equity analysis *may* be relevant in determining whether a subchapter S corporation has a second class of stock in situations where a tax avoidance scheme is alleged. Amory Cotton Oil Co. v. United States, 5 Cir. 1972, 468 F.2d 1046, at 1047. We do not find it necessary to reach this question.

**578**

support for the proposition that "disproportionality" was intended by Congress to transform what the principals to the corporation denominated debt obligations into preferred stock.

It is indisputable that in the event of a liquidation the holders of debt instruments would be entitled to satisfaction of their claims before stockholders would be entitled to participate in a distribution of the corporation's property. But the preferred position of the creditors does not compel the conclusion that the evil that Congress sought to avoid in enacting the "one class of stock" requirement is on the scene. As noted earlier in this opinion, Congress, by enacting Title 26, U.S.C., § 1376(b)(2), clearly envisioned the extension of credit to a corporation by its stockholders and did not seek to restrict such extensions of credit by means of a requirement of "proportionality".

The United States also argues that the failure to treat the debt obligations in this case as a second class of stock would be inconsistent with Title 26, U.S.C., Sec. 1244's treatment of stock issued by a "small business corporation". For this proposition, the United States relies upon Hollenback v. Commissioner, 9 Cir. 1970, 422 F.2d 2. We believe the *Hollenbeck* decision should be distinguished from the case *sub judice*. The appellants in *Hollenbeck* sought to take ordinary loss deductions on the sale or exchange of common stock issued to them by a "small business corporation". In order for the common stock sale to give rise to an ordinary loss deduction under Section 1244, the stock must have been "issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities) . ." Title 26, U.S.C., § 1244(c)(1)(D). The Commissioner determined that the common stock in question, which had been issued upon the cancellation of the corporation's indebtedness to the appellants, had been issued for the equivalent of "stock and securities" (i. e., long-term loans to the corporation which actually constituted debt capital) and therefore did not qualify for the favorable ordinary loss treatment. The Tax Court and the Court of Appeals upheld the Commissioner's ruling. The *Hollenbeck* rationale was based upon the specific language of Section 1244, Title 26, United States Code. There is no equivalent language in Subchapter S to support the United States in its "debt-equity" and "proportionality" criteria urged in this case. Our rejection of Treasury Regulations § 1.1371–1(g) is not inconsistent with the meaning of Section 1244 of the Internal Revenue Code and with the *Hollenbeck* rationale.

### VIII. CONCLUSION

In affirming the district court's judgment in this case, we are not unmindful of the authority delegated by Congress to the Secretary of the Treasury and his delegates to "prescribe all needful rules and regulations for the enforcement of this title". Title 26, U.S.C., § 7805(a). We are aware also of the presumption of validity attaching to regulations of the Treasury Department in the internal revenue field. Bingler v. Johnson, 1969, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695. Nevertheless, we are unable to sanction the Treasury's attempt, by means of Treasury Regulations § 1.-1371–1(g), to restrict the eligibility of corporate taxpayers for Subchapter S treatment through the use of "debt-equity" and "proportionality" standards. If these standards are to be employed in assessing the eligibility of corporate taxpayers for "small business corporation" Subchapter S tax treatment, Congress is the authoritative body to prescribe them.

Affirmed.