**Ira Lee THOMAS, Appellant,**

v.

**Martha S. THOMAS, Appellee.**

**No. 01–86–0125–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 10, 1987.

Robert J. Piro, Piro & Lilly (Pamela E. George of counsel), Houston, for relator-appellant.

Donn C. Fullenweider, Clinard J. Hanby, Haynes & Fullenweider, Houston, for appellee.

Before COHEN, SAM BASS and DUNN, JJ.

OPINION

COHEN, Justice.

In this appeal from a judgment dividing the marital estate, we must decide whether the retained earnings of a Subchapter S corporation are marital property subject to division on divorce. We hold that they are not.

The parties were married on November 17, 1968. Appellee filed for divorce in November 1983. Appellant was employed throughout the marriage as an executive with Proctor and Gamble.

Alexandria Coca–Cola Bottling Company Ltd. (hereafter the corporation) was founded in 1906 by appellant's grandfather. All stock in the corporation is owned by descendants of the founding family. Appellant has been Chairman of the Board since 1973. Between 1976 and 1982, appellant acquired approximately 16% of the stock in the corporation by gift and inheritance. It is undisputed that this stock is his separate property.

The corporation was a "Subchapter S" corporation at all relevant times, 26 U.S.C. sec. 1361, et seq. (1982 & Supp.1984), and its income was treated as personal income of the shareholders for federal income tax purposes. Accordingly, the community estate paid federal income taxes on appellant's proportionate share of total corporate earnings, whether retained by the corporation or distributed to the shareholders, and the corporation neither owed nor paid federal corporate income tax on its income.

Between 1976 and 1984, the community received dividends of just over $500,000. The record does not disclose whether the community's federal income tax liabilities arising from the corporation's income exceeded whatever tax benefits may have arisen from ownership of the corporate stock.

It is undisputed that the corporation did not distribute all of its earnings to the shareholders. In special issue number three, the jury found that $146,000 of retained corporate income earned during the marriage was attributable to appellant's shares of stock.

The trial court's judgment provided:

[Appellant] shall pay over to [appellee] forthwith (but no later than five (5) calendar days from his receipt thereof) one-half of any sums paid to him by the Coca Cola Bottling Company of Alexandria for his share of the earnings of that company until the sum of Seventy–Three Thousand and No/100 Dollars ($73,000.00) is paid over to [appellee]. [Appellant] is hereby appointed trustee for [appellee] under this provision until all sums due [appellee] have been paid to her and shall be accountable to [appellee] and the Court as trustee. [Appellant] shall notify the company of this award to [appellee] and shall take no action which is inconsistent with this Order. [Appellant] shall furnish [appellee] with a full disclosure and accounting of all sums received by him from the company until this portion of the judgment has been satisfied.

Appellant's third point of error contends that the trial court erred in awarding appellee $73,000 because those funds will be appellant's separate property, if and when he ever receives them.

The parties agree that the $73,000 award was based on special issue three and that it was based upon the trial court's implied characterization of the retained corporate earnings as community property. Therefore, we must decide whether the corporation's retained earnings are community property.

It is well established that unless the corporation is a spouse's alter ego, *Vallone v. Vallone*, 644 S.W.2d 455 (Tex. 1982), a court upon divorce may award only shares of stock, and not corporate assets. *McKnight v. McKnight*, 543 S.W.2d 863 (Tex.1976). Moreover, a court may not divest a spouse of separate property corporate stock and award it to the other spouse.

*Cameron v. Cameron,* 641 S.W.2d 210 (Tex.1982). Appellee admits that in an ordinary corporation, retained earnings are a corporate asset. They are not marital property, separate or community. Appellee contends, however, that retained earnings of a Subchapter S corporation should be treated as community property because the community has paid federal income tax on them. This, she argues, justifies the recognition of a community interest in the retained earnings. We disagree.

Subchapter S status does not determine who owns the corporation's earnings. It merely provides an alternate method to tax the corporation's income. A Subchapter S corporation may distribute its income, but, like any other corporation, it is not required to do so. Corporate distributions, regardless of form, are controlled by state law. *See Commissioner v. Cohen,* 121 F.2d 348 (5th Cir.1941); Tex.Bus.Corp.Act.Ann. arts. 2.38, 2.39, 2.40 (Vernon 1980). The shareholder in a Subchapter S corporation has no greater rights over corporate property than a shareholder in any other corporation.

In *Suburban Utility Corp. v. Public Utility Commission,* 652 S.W.2d 358 (Tex. 1983), a rate case, the court held that a Subchapter S utility could deduct from its income federal taxes paid by its shareholders. Thus in a rate making proceeding governed by state law, the corporation was entitled to the expense deduction, even though the shareholders had paid the taxes. The court recognized that the earnings were owned by the corporation, not by the shareholders. It wrote:

> Under Subchapter S...., a corporation may elect a tax status which protects the earnings and profits *of the corporation* from conventional corporate tax rates. (Emphasis added.)

652 S.W.2d at 363. The court thus recognized that the tax treatment of a Subchapter S corporation under federal law would not control the characterization of taxation expense under state law.

Other courts have recognized that Subchapter S status does not affect state tax liability. Thus, states may require Subchapter S corporations to pay state corporate income tax. *Commonwealth v. N.I. Inc.,* 31 Pa.Commw. 235, 375 A.2d 898 (1977), *aff'd,* 482 Pa. 261, 393 A.2d 653 (1978); *Brown v. Dept. of Revenue,* 558 S.W.2d 635 (Ky.Ct.App.1977).

Courts in community property states have unanimously held that corporate earnings remained corporate property until distributed and, therefore, were not divisible on divorce. *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 827 (Mo.1984); *Simplot v. Simplot,* 96 Idaho 239, 526 P.2d 844 (1974); *Speer v. Speer,* 25 Cal.Rptr. 729, 209 Cal. App.2d 233 (Cal.Ct.App.1962); *Gapsch v. Gapsch,* 76 Idaho 44, 277 P.2d 278 (1954).

We conclude that, while the corporation retained some earnings as "previously taxed income" of the shareholders, the earnings remained the corporation's exclusive property and never belonged to the appellant or the marital estate.

Appellee next contends that a Subchapter S corporation should be treated as a partnership because it is taxed like a partnership. Again, we disagree.

Federal law recognizes that Subchapter S does not convert a corporation to a partnership. *United States v. Richardson,* 469 F.2d 349 (10th Cir.1972); *United States v. Silverman,* 359 F.Supp. 1113 (N.D.Ill. 1973); *Neal v. United States,* 313 F.Supp. 393 (C.D.Cal.1970); *Wilhelm v. United States,* 257 F.Supp. 16 (D.C.Wyo.1966); *R.S. Smero, Inc. v. Levine,* 51 A.D.2d 273, 381 N.Y.S.2d 337 (1976); *Motheral v. Motheral,* 514 S.W.2d 475, 477 (Tex.Civ. App.— Corpus Christi 1974, writ ref'd n.r. e.), relied on by the appellee, is not to the contrary.

We observe that the marital community benefits from the Subchapter S election. When corporate income is taxed as personal income, the corporation avoids tax liability, and the community avoids having dividends taxed twice, first as corporate income, and then, upon receipt, as personal income. *See* 26 U.S.C. sec. 1371, et seq. (1982 & Supp.1984); *Shores Realty Co. v. United States,* 468 F.2d 572 (5th Cir.1972); *Brown v. Dept. of Revenue,* 558 S.W.2d 635 (Ky.App.1977). By avoiding corporate taxation, the corporation has more money

to distribute as dividends. If the corporation has tax credits or losses, these reduce the community's taxable income. All the while, the corporate veil shields the shareholder from personal liability. Congress intended for shareholders in Subchapter S corporations to enjoy these substantial benefits.

Upholding the trial court's order in this case could lead to undesirable and unpredictable results. It would tend to engraft upon our community property system the manifest complexities of federal tax law. If, by paying taxes, the community acquired an interest in a Subchapter S corporation's retained earnings, it presumably would also acquire an interest in property purchased with the reinvestment of those earnings. The bright line dividing the corporate estate from the marital estate would be dimmed. Such a result would not bode well for the future of this highly desirable corporate form.

We hold that previously taxed and retained earnings of a Subchapter S corporation are corporate assets, and are neither the community nor the separate property of the shareholder. Accordingly, the order that appellant pay $73,000 to appellee, when and if received as dividends from the corporation, improperly awards property that is not presently owned by the community and that will be appellant's separate property, if and when it is received. The third point of error is sustained.

In view of our disposition of the third point of error, it is not necessary for us to discuss the first, second, fourth, and fifth points of error.

■ In points of error six through twelve, appellant contends that the trial court erred in submitting special issues four and five, in which the jury found that the community should be reimbursed $150,-000 because the community estate was used to enhance the value of appellant's corporate stock. Appellant also asserts that the evidence was factually and legally insufficient to support the jury's answers.

Based on the jury's findings, appellant became obligated to reimburse the community estate for $150,000. However, the judgment awarded the community's entire right of reimbursement to appellant. Thus, even if this obligation was erroneously imposed, appellant is not harmed, as long as the judgment eliminates the obligation by awarding it to him. Moreover, appellant does not contend that he was deprived of any other community property by virtue of his receipt of this specific community asset.

We therefore hold that any error was harmless, unless awarding the right solely to appellant resulted in the overall property division being "so manifestly unjust that it constituted clear abuse of the trial court's discretion." *See Zisblatt v. Zisblatt,* 693 S.W.2d 944, 956 (Tex.App.—Fort Worth 1985, writ dism'd); *King v. King,* 661 S.W.2d 252 (Tex.App.—Houston [1st Dist.] 1983, no writ). Appellant makes no such contention. Accordingly, points of error six through twelve are overruled.

Insofar as it divides the community estate of the parties, the judgment is reversed, and the cause is remanded to the trial court for a re-division of the community estate.

DUNN, J., concurring and dissenting.

SAM BASS, J., dissenting and concurring.

DUNN, Justice, concurring and dissenting.

I concur with the majority in the disposition of the Subchapter S issue, but I dissent from the holding with respect to the reimbursement issues.

The appellee asserts two separate claims for reimbursement, one for the appellant's time, toil, and talent used to enhance the value of his separate estate, and another for the use of community credit to enhance the value of the appellant's separate estate. With respect to the reimbursement claim for the appellant's time, toil, and talent, the "right to reimbursement is only for the value of the time, toil and effort expended to enhance the separate estate other than that reasonably necessary to manage and preserve the separate estate, for which the

community did not receive adequate compensation." *Jensen v. Jensen,* 665 S.W.2d 107, 110 (Tex.1984) (*Vallone v. Vallone,* 644 S.W.2d 455, 459 (Tex.1982)). The appellee had the burden of introducing sufficient evidence to establish each of the elements of her reimbursement claim. *Id.* The appellee failed to introduce any evidence of the amount of time that was reasonably necessary for the appellant to spend managing and preserving his separate estate. Further, there is no evidence in the record concerning the value of the time, toil, and talent expended by the appellant beyond what was reasonably necessary to preserve his separate estate. The appellee has, therefore, failed to meet her burden of establishing the community's right to reimbursement for the appellant's time, toil, and talent expended on his separate property.

With respect to the reimbursement claim based on the use of community credit to enhance the appellant's separate property, the appellee has again failed to satisfy her burden of going forward with evidence of each element of this claim. Initially, I note that this is not a case of community credit being used to construct an improvement on separate property.

On May 29, 1979, the Coca–Cola Bottling Co. borrowed $2,000,000, at a maximum interest rate of the prime rate + 1.35%, from the Guaranty Bank and Trust Co. of Alexandria, Louisiana. This loan was to be used to purchase land and construct improvements at the Coca–Cola bottling facility. The improvements were completed sometime in August 1980. On September 1, 1981, the Guaranty Bank and Trust Co. entered into an agreement, effective October 14, 1981, with the Industrial Development Board of the Parish of Rapides, Inc. for the issuance of industrial revenue bonds in the amount of $2,200,000 for the purpose of refinancing the May 29, 1979 loan to the Coca–Cola Bottling Co. Also on September 1, 1981, both the Coca–Cola Bottling Co. and the appellant and the appellee entered into agreements with Guaranty Bank and Trust Co. guaranteeing the payment of the principal and interest on the bonds. The purpose of this refinancing

agreement was to reduce Coca–Cola Bottling Co.'s interest costs on its loan. The maximum interest rate payable on the bonds was 70% of the prime rate, with a total savings to the corporation of approximately $638,000.

Neither the parties' research nor ours has revealed a Texas case deciding the question of whether the community has a right to reimbursement for the use of its credit to secure a loan to refinance the husband's separate property debts. However, I am not willing to state, at this time, that this new reimbursement theory is without merit. I would analogize this situation to cases where separate debts are discharged with community funds. *See Villarreal v. Villarreal,* 618 S.W.2d 99 (Tex.Civ.App.—Corpus Christi 1981, no writ); *Hawkins v. Hawkins,* 612 S.W.2d 683 (Tex.Civ.App.—El Paso 1981, no writ). However, there is an important difference between the case before us and cases involving the discharge of a separate debt with community funds. When a debt is discharged, the cost to the community is obvious, but when a separate property debt is refinanced with the community acting as a guarantor, the cost to the community is not so readily ascertainable. In the latter situation, expert testimony would be required on the percentage risk undertaken by the community, and a dollar value would have to be assigned to that risk.

In the case before us, there is no testimony concerning the cost to the community resulting from the use of their credit to guarantee the refinancing of the separate property debt. Further, there is evidence in the record that even though the guarantee was for $2,200,000, and the net community assets were approximately $660,000, the appellant was nevertheless able to negotiate a loan from the River Oaks Bank & Trust Co. subsequent to the guarantee. The appellee has, therefore, failed to meet her burden of establishing the community's right to reimbursement for the use of the community credit.

Because I find that the community's claim for reimbursement was not supported by sufficient evidence, the question

is whether this error "was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case." Tex.R.App.P. 81(b)(1). In a decree of divorce the court shall order a division of the estate of the parties in a manner that the court deems just and right. Tex.Fam. Code Ann. sec. 3.63(a) (Vernon Supp.1987).

My review of the record indicates that the trial judge's "just and right" division of the property constituted an approximately equal division of the community assets. However, this division was based on the jury's erroneous finding that the community had a $150,000 claim for reimbursement. Because of this reimbursement error, the community estate has now been reduced causing a disproportionate disposition of the property not in accordance with what the trial court determined was a "just and right" division of the property. I would remand this case to the trial judge for a new division of the community estate that does not include the $150,000 reimbursement claim. *Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex.1985).

SAM BASS, Justice, dissenting and concurring.

I concur with the majority concerning the reimbursement issues, and dissent as to whether "previously taxed income" of a Subchapter S corporation is community property, and thus, divisible upon divorce.

The community received dividends paid to appellant on his separately owned stock in the Alexandria Coca Cola Bottling Company Ltd. ("Corporation"). Appellant owns 16% of the stock, which he obtained by gift and inheritance from his parents.

The amounts of dividends were as follows:

| | | |
|---|---|---|
| 1976 | - | $ 8,250.00; |
| 1977 | - | $ 28,530.00; |
| 1978 | - | $ 35,700.00; |
| 1979 | - | $ 41,250.00; |
| 1980 | - | $ 28,500.00; |
| 1981 | - | $ 27,300.00; |
| 1982 | - | $ 68,105.54; |
| 1983 | - | $137,812.20; |
| 1984 | - | $153,162.90; |
| 1985 | - | $ 58,710.00. |

These dividends were deposited in the joint account of Mr. and Mrs. Thomas and were used for living expenses and acquisition of community assets.

The corporation is a Subchapter S corporation, and by express stipulation and agreement of all of the shareholders of the corporation, its earnings are taxed to the shareholders individually. The jury found that $146,000 was the amount of earnings, which is called "previously taxed income," to the appellant that provided the basis of a $73,000 award to the appellee.

It is fundamental that the division of property upon divorce is largely within the discretion of the trial court. *McKnight v. McKnight*, 543 S.W.2d 863, 866 (Tex.1976). The Tex.Fam.Code Ann. § 3.63(a) (Vernon Supp.1985), provides that:

(a) In a decree of divorce or annulment the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage.

In applying this section of the Texas Family Code, courts have consistently held that:

Section 3.63 of the Texas Family Code affords the trial court wide latitude and discretion in dividing the community estate of the parties upon dissolution of their marriage. In reviewing the actions of the trial court, the appellate court will presume that the trial court exercised its discretion properly. The trial court's discretion will not be disturbed on appeal unless a clear abuse has been shown.

*Zisblatt v. Zisblatt*, 693 S.W.2d 944, 956 (Tex.App.—Fort Worth 1985, writ dism'd).

Appellant argues that issue three, which relates to what, if any, is the "previously taxed income" of the corporation that can be attributed to the shares owned by appellant, should have included a request for reimbursement to the community or alternatively another theory of recovery. Additionally, appellant complains that issue three is not supported by any evidence and/or insufficient evidence for the jury finding supporting an award to the appellee of $73,000 of the "previously taxed

income" when and if distributed by the corporation. Further, appellant alleges that the previously taxed and undistributed income held by the corporation was an award of corporate property or alimony and not community property subject to division upon divorce.

The evidence reveals that the entire income of the corporation for each year was immediately attributed on a proportional basis to the shareholders at the shareholders' expressed request. Each shareholder was required to pay income tax on the income attributed to them. The corporation, however, frequently failed to actually distribute all of the income attributed to the shareholders, and that income was retained in the corporation as "previously taxed income" distributable to the shareholders. Thus, the corporation accumulated "previously taxed income" of the shareholders as follows:

| Prev. Taxed Income | Year | Appellant's Ownership | Amount Attributed To Appellant |
|---|---|---|---|
| 160,000 | 1979 | 7½% | 12,000 |
| 30,000 | 1980 | 7½% | 2,250 |
| 250,000 | 1981 | 7½% | 18,750 |
| 240,000 | 1982 | 7½% | 18,000 |
| 280,000 | 1983 | 16% | 44,800 |
| TOTAL | | | 95,800 |

In 1984, the corporation accumulated $20,000 in "previously taxed income," and in the first five months of 1985, the corporation accumulated an additional $25,000 attributable to the appellant's interest in the corporation. The total of $153,800 agrees with the jury finding of $146,000. The trial court awarded the appellee one-half of that amount, when and if distributed, upon the basis that such was income previously distributable as "previously taxed income."

The law is well established that a property division upon divorce is solely within the discretion of the trial court. *McKnight*, 543 S.W.2d at 866. The jury has no power to divide the property, its answers are only advisory regarding the disposition of property; *Cockerham v. Cockerham*, 527 S.W.2d 162, 173 (Tex.1975); *Roach v. Roach*, 672 S.W.2d 524, 529 (Tex.App.—Amarillo 1984, no writ). The jury can merely find specific facts to be used by the trial court in the exercise of its discretion. *Id.* Therefore, there was no need for a jury finding on whether some portion of the previously taxed undistributed income should be paid to appellee. This matter was solely in the discretion of the trial court.

Appellant also asserts that the undistributed "previously taxed income" of the corporation is not divisible upon divorce and therefore, the award to appellee constitutes alimony or the division of corporate property.

If a corporation is designated as a Subchapter S corporation, means that the corporation's undistributed taxable income is taxed to the shareholders, much like income of a partnership is taxed to individual partners. *Motheral v. Motheral*, 514 S.W.2d 475, 477 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). The undistributed income of separate property partnerships is treated as community property. *Grost v. Grost*, 561 S.W.2d 223, 229 (Tex. Civ.App.—Tyler 1977, writ dism'd). Texas courts consistently hold that that portion of the partnership interest that consists of profits accumulated during marriage, whether or not distributed, is community property. *Norris v. Vaughan*, 152 Tex. 491, 260 S.W.2d 676, 681 (1953).

Accordingly, the trial court had complete discretion in the division of the undistributed but "previously taxed income" of the corporation upon divorce.

Appellant also alleges that there is no evidence, or insufficient evidence, to sup-

port the jury's finding of $146,000 on issue three.

The evidence in the record is that there was "previously taxed income" retained by the corporation that the community had not received, but that was properly due to the community. Further, appellee's expert witness testified that the undistributed "previously taxed income" since May 12, 1983, was $235,000.

Thus, the jury finding that the community owned $146,000 of the undistributed "previously taxed income" by the corporation is sufficiently supported by the evidence.

I respectfully dissent from the majority opinion on the subject of "previously taxed income," and I would affirm the judgment of the trial court on that issue.