**AFFIRMED and Opinion Filed March 7, 2024**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-23-00051-CV

**CHERIE FAYE WOODWARD, Appellant/Relator**
**V.**
**BRIAN DAVID WOODWARD, Appellee/Real Party in Interest**

**On Appeal and Original Proceeding from the 468th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 468-50207-2021**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Smith
Opinion by Justice Reichek

This is a combined appeal from a divorce judgment and an original proceeding. Pro se appellant/relator Cherie Woodward (Wife) complains of the trial court's division of property under a premarital agreement (PMA) and of some evidentiary issues. In her petition for writ of mandamus, writ of prohibition, and writ of injunction, Wife asks this Court to stay enforcement of the judgment, recuse the trial judge, issue a writ of prohibition, issue a writ of injunction, and declare portions of the divorce decree void. We deny the petition for writ of mandamus, dismiss the

requests for a writ of prohibition and writ of injunction, and affirm the divorce decree.

BACKGROUND

**A.    Divorce Proceedings**

Wife and appellee/real party in interest Brian Woodward (Husband) married on May 26, 2017.  They did not have any children during the marriage, but each had children from previous marriages.

Prior to the marriage, Wife started a business called Nursery Decals and More, Inc. (NDAM), an S-corporation.  NDAM sells baby products, including wall decals. Wife owns all 100 shares of NDAM.  In early 2017, Husband quit his job in IT and started working fulltime for NDAM.  He performed general management and human resource duties and helped with advertising.

Before they married, Husband and Wife signed a PMA, which they ratified after the marriage.  Under the PMA, all community property was to be equally divided between Husband and Wife.  The PMA provided that NDAM would remain Wife's separate property.  In section 4.4, however, the agreement provided that NDAM's income during the marriage would be community property, with three exceptions:

> *4.4    Community Estate Arisen from Prior Assets*
>
> Cherie Faye Alexander and Brian David Woodward understand and agree that community estate will arise or be created during their marriage as it applies to income generated from Nursery Decals and

–2–

More, Inc. with the exception of current inventory, funds reallocated into the business, and the first one hundred and fifty thousand dollars ($150,000) located in the business checking account.

Wife, who is not a lawyer, drafted section 4.4 of the agreement. At trial, Husband's expert, CPA Bryan Rice, described the provision as "very unusual."

Wife and Husband filed counter petitions for divorce in early 2021. Both parties asked the trial court to enforce the PMA and divide the community estate in accordance with their agreement. In her live pleading, Wife also asserted that Husband breached the PMA in a few ways, committed theft of a Network Attached Storage (NAS) device that belonged to NDAM, and was liable for intentional infliction of emotional distress.

After a bench trial where Wife appeared pro se, the trial court found the PMA valid and enforceable. On October 19, 2022, the trial court signed a final decree of divorce that divided the marital estate. With respect to NDAM, the trial court ordered the following was Wife's sole and separate property:

- Real property owned by NDAM at 480 McKinney Parkway in McKinney, Texas;

- A Chase checking account owned by NDAM and $150,000 in the account;

- The business known as NDAM, including all fixtures, furniture, machinery, cash, receivables, etc., subject to other orders contained within the decree;

- Real property owned by NDAM located at 1005 S. McDonald Street in McKinney; and

- Inventory of NDAM at historical value in 2017, valued at $141,005, owned by NDAM.

Wife was ordered to pay Husband a total of $352,157.50. That amount was made up of $32,911 in contractual spousal maintenance, $118,180 for Husband's community portion of an investment account, "the Folio Account," and $201,066.50 that was the community portion of NDAM pursuant to the PMA. The trial court determined that $153,822.07 in community funds were used to pay for NDAM's McDonald Street property during the marriage. As a result, the decree provides that Husband "may take a lien against this real property if necessary to secure his portion of the community estate pursuant to the community property settlement." The decree recites that all relief requested and not expressly granted is denied. On Wife's request, the trial court made findings of fact and conclusions of law.

## B.    Wife's Appeal

Wife timely appealed, but has not superseded the judgment. Her pro se appellate brief presents seven issues. She contends the trial court abused its discretion by (1) interpreting the PMA to convert undistributed NDAM income into community property; (2) allowing testimony about the meaning of terms in the PMA and in crediting that testimony; (3) finding that Husband had authority to transfer money out of an NDAM account; (4) allowing Husband to place a lien on NDAM property; and (5) excluding tracing schedules she created. She also contends the trial court erred in (6) its interpretation of indemnity provisions in the PMA; and (7) failing to find that Husband breached the PMA.

–4–

Wife unsuccessfully attempted to obtain a stay of the divorce judgment in the appeal. In June 2023, she filed an opposed emergency motion to stay execution of judgment. The Court denied the motion. About a week later, Wife filed a motion to reconsider; we denied that motion as well.

## C. Post-Judgment Trial Court Proceedings

On May 5, 2023, Wife filed a verified motion to recuse the trial judge, respondent Judge Lyndsey Wynne. According to Wife, "the recusal motion was denied by Judge Wynne, heard by retired Judge Kim Cooks, and swiftly denied at the end of the hearing." Wife contends she filed the motion to recuse before a May 30, 2023 hearing relating to the "correct[ion of] unredacted exhibits filed by opposing counsel at trial."

On October 19, 2023, Husband filed a petition for enforcement in the trial court. He alleged four violations of the divorce decree, one of which was Wife's failure to pay him $201,066.50 as his community portion of NDAM's business. That same date, Husband served Wife with post-judgment interrogatories and requests for production.

On October 25, 2023, Wife filed an Objection to Post-Judgment Discovery/Enforcement & Motion to Stay By Submission, asking the trial court to stay all proceedings, including post-judgment discovery and efforts to execute on the judgment pending appeal. In response, Husband argued that Wife did not supersede the judgment.

**D. This Original Proceeding**

On November 10, 2023, Wife, again proceeding pro se, filed a "Petition for Writ of Mandamus, Writ of Prohibition, & Writ of Injunction" in this Court. In her petition, Wife asks this Court to (1) declare "all orders void within the decree that pertain to NDAM property as part of the community estate"; (2) order respondent to recuse herself from the case, or alternatively issue a writ of prohibition against the trial judge to prevent further orders that restrict, inhibit, or affect NDAM; (3) issue a writ of injunction against Husband to prevent him from asserting any further claims against NDAM property; and (4) issue a "temporary order staying any execution, enforcement, and post-judgment discovery on the judgment during the pendency of [this] appeal." Because of the overlap between the relief Wife seeks in the original proceeding and the appeal, on the Court's own motion, we consolidated the mandamus proceeding into the direct appeal.

## ORIGINAL PROCEEDING

We first consider the arguments Wife makes in her petition for writ of mandamus. Her lengthy petition lacks clarity. The Court will address her arguments based on the four types of relief she seeks in her prayer.

Although we construe pro se pleadings and briefs liberally, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with

applicable laws and rules of procedure. *Moreno v. Silva*, 316 S.W.3d 815, 817 (Tex. App.—Dallas 2010, pet. denied). To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel. *Id.*

## A.    Declare Portions of the Decree Void

We begin with Wife's request that the Court declare certain portions of the divorce decree void. To establish a right to mandamus relief, a relator must show (1) that the trial court clearly abused its discretion and (2) that relator lacks an adequate appellate remedy. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). Wife's petition for writ of mandamus clearly challenges the terms of the divorce decree, which is appealable. But a trial court abuses its discretion when it issues a void order, and a relator need not show she lacks an adequate remedy by appeal from a void order. *In re Vanderlight*, No. 05-23-00924-CV, 2023 WL 6284702, at *1 (Tex. App.—Dallas Sept. 27, 2023, orig. proceeding) (mem. op.).

Wife's arguments as to why the decree is void involve the fact that her business NDAM was not a party to the lawsuit. She complains the decree erroneously: (1) divested NDAM of its interest in undistributed corporate income reported on Husband and Wife's tax returns; (2) divested NDAM of its interest in $350,000 that Husband transferred to the Folio investment account without authority; (3) divested NDAM of its equipment and inventory used for business operations; (4) and potentially divested NDAM of its interest in real property

because it allowed Husband to place a lien on NDAM property. Wife argues these provisions of the decree are void because NDAM was a non-party to the suit and the trial court did not have jurisdiction over it or its property. In its findings and conclusions, the trial court concluded that "[a]ll persons entitled to citation were properly cited."

In the appeal, Wife does not expressly contend any portion of the divorce decree is void, but she otherwise raises arguments similar to her arguments about the decree being void. Wife argues the trial court abused its discretion by:

- allowing Husband to place a lien on real property owned by NDAM, a non-party to the suit and in spite of the terms of the premarital agreement (Issue 4);

- interpreting the premarital agreement as converting undistributed corporate assets into community property (Issue 1); and

- deciding that Husband had authority to transfer $350,000 from NDAM's corporate account to the joint Folio Account, divesting NDAM of the funds (Issue 3).

We review the trial court's rulings dividing the parties' property under an abuse of discretion standard. *In re Y.B.*, No. 05-21-00915-CV, 2023 WL 4013299, at *2 (Tex. App.—Dallas June 15, 2023, no pet.) (mem. op.). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Id.* In family law cases, the abuse of discretion standard of review overlaps with the traditional legal and factual sufficiency standards of review. *In re Marriage of A.W.E. & D.M.F.N.*, No. 05-19-01303-CV, 2021 WL 822492, at *5 (Tex. App.—Dallas March 4, 2021, no pet.) (mem. op.). Legal and factual sufficiency are relevant

–8–

factors in determining whether the trial court abused its discretion. *Id.* To determine whether the trial court abused its discretion, we consider whether the trial court (1) had sufficient evidence on which to exercise its discretion and (2) erred in its exercise of that discretion. *Id.* A trial court does not abuse its discretion if it bases its decision on conflicting evidence as long as there is some evidence of a substantive and probative character to support the decision. *In re Y.B.*, 2023 WL 4013299, at *2. The trial judge is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*

### 1. Undistributed NDAM Income

In her original proceeding and in issue one in the appeal, Wife complains that NDAM was divested of undistributed corporate income. This argument involves the $201,066.50 she was ordered to pay Husband as income generated by NDAM during the marriage pursuant to section 4.4 of the PMA. Wife argues it was improper for the trial court to award Husband a share of NDAM income because NDAM was not a party to the lawsuit or the PMA and was not bound by the PMA's terms.

NDAM is a subchapter S corporation. A subchapter S corporation is formed by election of corporate management. *Eichenour v. Phillips Iron Works, Inc.*, No. 01-89-01199-CV, 1991 WL 162740, at *4 (Tex. App.—Houston [1st Dist.] Aug. 22, 1991, writ denied) (not designated for publication); *see* 26 U.S.C. §1361. The distinctive feature of an S corporation is that corporate earnings and profits are not subject to corporate income tax because the corporate income is constructively

–9–

passed through and taxed to the stockholders, even though the income is not distributed. *Eichenour*, 1991 WL 162740, at *4. The income of an S corporation is treated as personal income of the shareholders for federal income tax purposes. *Thomas v. Thomas*, 738 S.W.2d 342, 343 (Tex. App.—Houston [1st Dist.] 1987, writ denied). The retained earnings of an S corporation are corporate assets and are neither community property nor the separate property of the shareholder. *Id.* at 345.

Wife cites the general rule that undistributed income of an S corporation is a corporate asset. Here, however, in a "very unusual" arrangement, Wife entered into a contract providing that NDAM income generated during the marriage, with some exceptions, would be considered community property. Wife is the sole owner of NDAM. She drafted the provision of the PMA at issue, signed and ratified the PMA, and asked the trial court to enforce the agreement. Under the parties' PMA, NDAM income was community property, not a corporate asset. Under these circumstances, we conclude the trial court did not err in concluding that all necessary parties were before the court or abuse its discretion in awarding Husband a share of NDAM income generated during the marriage.

### 2. Transfers to Investment Account

Wife's next complaint is that, due to transfers made by Husband, $350,000 in the parties' Folio Account was NDAM property. Wife testified that between August 2019 and January 2020, Husband made several transfers of money from NDAM's checking account to the Folio Account. In the fall of 2019, he transferred some

money from Folio back to the business checking account. According to Wife's testimony, $350,000 from the NDAM business account ended up in the Folio account. She argues the trial court erred in awarding Husband $118,180 from the Folio Account because it belonged to NDAM and the decree is void. In a related issue in the direct appeal, issue three, Wife argues the trial court abused its discretion in determining that Husband had authority to transfer $350,000 out of NDAM's account to the Folio Account.

There was conflicting evidence at trial about Husband's authority to transfer money from the NDAM business account to the parties' Folio Account. Wife testified she was the only one authorized to make distributions for NDAM. She said Husband had no authority to transfer the money and that she only found out about the transfers later.

Husband testified that he and Wife opened the Folio Account to diversify income. Wife had full access to the Folio Account, but chose not to log in and did all investing through Husband. He was her proxy for moving funds in and out of the account. They had face-to-face conversations about the transfers. Husband testified he was an account holder on the NDAM business account. He had his own debit and credit cards for the account and his own login. Wife made him an additional user to give him full authority to see the account statements and make transfers as needed. He testified he made no transfers without Wife's knowledge. Immediately after that statement, Wife responded, "Yet." Husband's evidence included October

2019 text messages from Wife directing him to move $150,000 back to the business bank account because that account did not have enough money in it.

The evidence supports the trial court's determination that Husband, an employee of NDAM, transferred money out of the business bank account and into the couple's investment account with Wife's knowledge and authorization. Wife maintains the PMA required express written consent before Husband could make the transfers. If it did, there was evidence she waived that provision through her conduct. The money in the Folio Account was not NDAM property at the time of the divorce and the trial court did not err in awarding Husband his share.

### 3. Equipment and Inventory

Wife also complains NDAM was divested of its equipment and inventory. She directs the Court to paragraph H-2 of the decree which awards Husband the following items: "Western Digital 4TB NAS Hard Drive 4x; QNAP NAS TS-469-PRO, . . . Stitch It Embroidery Hardware Rogue Op; Outdoor Cap – Inventory-Rogue Op; and Clothing Samples – Rogue Op." Rogue Op is a business started by Husband during the marriage that is his separate property under the PMA.

Evidence showed an NAS device is computer equipment used to backup documents and also for storage. Wife argues Husband voluntarily gave NDAM his personal NAS device and hard drives while he worked for the company. She contends the device is now the property of NDAM, not the separate property of Husband. The testimony regarding the NAS device is not completely clear as there

–12–

was testimony about two NAS devices. Husband owned an NAS device prior to marriage. Because Wife was looking for ways to back up her business data, he allowed his personal device to be used at the business until they figured out another solution. Since NDAM was using his old NAS, Husband purchased a new NAS for his personal computer. Although Wife argues Husband gave his NAS device to NDAM and it became NDAM property, there was evidence to suggest Husband merely loaned his device to the business "until they figured out another solution."

The decree also awarded Husband inventory and equipment owned by his business Rogue Op that was in Wife's possession. Husband testified that Wife had all of Rogue Op's inventory in her possession, along with some embroidery and hardware. Wife argues Husband did not meet his burden to identify the property in question so as to distinguish it from NDAM property. Wife makes these arguments in her appeal as well, but they are not designated as an issue. Neither her petition nor her brief contains any legal authority for her contentions. *See* TEX. R. APP. P. 38.1(i), 52.3(h) (brief and petition must contain clear and concise argument for contentions made, with appropriate citations to the authorities). Wife has not met her mandamus burden to show the trial court clearly abused its discretion by awarding any NDAM equipment or inventory to Husband. We overrule these arguments in the appeal as well.

–13–

## 4. Potential Lien on NDAM Property

Finally, Wife argues the decree is void because it allows Husband to place a lien on NDAM's property and NDAM was not a party to the suit. This is also the subject of Wife's fourth issue on appeal. In addition to her argument about NDAM not being a party, she argues the potential lien is in violation of Section 4.9 of the PMA which prohibits Husband from taking any legal action that would affect NDAM from operating its business affairs as it deems appropriate.

The decree indicates the trial judge found that community funds of $153,822.07 were used to pay for NDAM's McDonald Street property during the marriage and states that Husband "may take a lien against this real property if necessary to secure his portion of the community estate."[1] As even Wife acknowledges, the divorce decree did not place a lien on NDAM property. It instead authorized Husband to place a lien on NDAM property to secure payment of money Wife owed to him under the decree. Wife has not shown the Court that Husband has put a lien on the property.

Further, when dividing marital property on divorce, trial courts may impose equitable liens on one spouse's separate real property to secure the other spouse's

---

[1] The decree makes a second reference to the potential lien in paragraph 9. It orders that Husband "shall take all legal actions necessary to secure his portion of the community estate, including, but not limited to, a lien against the real property owned by [NDAM] for the community funds used to pay for the building during the course of the marriage." While this provision does not specify that any potential lien is against the McDonald Street property, as opposed to the McKinney Parkway property, the building is on McDonald Street.

–14–

right of reimbursements for community improvements to that property. *Heggen v. Pemelton*, 836 S.W.2d 145, 146 (Tex. 1992). They may not impress such liens, absent any compensable reimbursement interest, simply to ensure a just and right division. *Id.* Here, because community funds were used to pay off the note, any equitable lien against the property is not inappropriate. *See Winkle v. Winkle*, 951 S.W.2d 80, 87 (Tex. App.—Corpus Christi–Edinburg 1997, writ denied) (lien against husband's separate property corporation alone would have been permissible, but trial court abused its discretion imposing lien on separate property beyond that found to have been benefitted by community estate). Wife has failed to show that the divorce decree is void as a result of a potential lien.

Wife paid off the note on the McDonald Street property about one month earlier than the payment was due and made the payment shortly after Husband moved out. She seems to argue that the trial court somehow penalized her for making this payment early and that it impacted the amount of money she owed Husband under the decree. There is nothing in the record to support this idea. The trial judge asked CPA Rice if the money used to pay off the NDAM building impacted his calculations regarding the community value of NDAM income. Rice said it was "all a wash from a net asset value perspective." Wife has not shown that the timing of the final loan payment impacted the amounts awarded in the decree.

Wife has not shown that the divorce decree divested NDAM of any property and has not shown that the decree is void. Therefore she had an adequate remedy

–15–

on appeal for her arguments. We have concluded her related arguments in the appeal are without merit. Accordingly, we deny the petition for writ of mandamus as to Wife's contentions that the decree is void, and we overrule Wife's first, third, and fourth issues on appeal.

## B.    Recusal and Writ of Prohibition

We turn to the other requests for relief in Wife's mandamus petition. She asks this Court to order "[r]espondent to recuse herself from this case or alternatively [for this Court to] issue a [w]rit of [p]rohibition against [r]espondent to prevent further orders that in 'any way restrict, inhibit, or affect' NDAM." Neither request has merit.

### 1.    Recusal

To the extent Wife's petition could be construed as a complaint that the trial court abused its discretion by denying her motion to recuse, we deny the petition based on an insufficient record. It is a relator's burden to provide this Court with a record sufficient to demonstrate entitlement to mandamus relief. *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex. 1992) (orig. proceeding). Wife provided the Court with a copy of an amended motion to recuse she filed in May 2023. But she did not provide us with a copy of her original motion, any order of referral, any order of assignment, or any order ruling on the motion. *See* TEX. R. APP. P. 52.3(k)(1)(A) (stating appendix must contain "a certified or sworn copy of any order complained of, or any other document showing the matter complained of"), 52.7(a)(1) (stating relator must file with petition "a certified or sworn copy of every document that is

–16–

material to the relator's claim for relief and that was filed in any underlying proceeding").

Wife also acknowledges that a hearing was held on her motion to recuse, but she neither provided us with a reporter's record from that hearing nor provided a statement that no testimony was adduced at that hearing. *See* TEX. R. APP. P. 52.7(a)(2) (requiring relator to file with petition "a properly authenticated transcript of any relevant testimony from any underlying proceeding, including any exhibits offered in evidence, or a statement that no testimony was adduced in connection with the matter complained").

The record in the direct appeal does not contain the documents or transcripts noted above. Accordingly, we conclude Wife failed to meet her burden to provide a record sufficient to demonstrate her entitlement to mandamus relief and deny her request that the Court compel respondent to recuse herself. To the extent relator asks this Court to compel relator to recuse herself for any reason not presented in her motion, we deny the request as relator has not demonstrated she has made a predicate request for action in the trial court before seeking mandamus relief. *See Vanderlight*, 2023 WL 6284702, at *2.

### 2. Writ of prohibition

To the extent relator asks this Court to issue a writ of prohibition against respondent, we dismiss the petition. The purpose of a writ of prohibition is to enable a superior court to protect and enforce its jurisdiction and judgments. *Holloway v.*

–17–

*Fifth Court of Appeals*, 767 S.W.2d 680, 683 (Tex. 1989) (orig. proceeding). The writ operates like an injunction issued by a superior court to control, limit, or prevent action in a court of inferior jurisdiction. *Id*. at 682. A writ of prohibition is a limited-purpose remedy used to enable an appellate court to protect and enforce its jurisdiction and judgments. *In re Cooper*, No. 05-19-00654-CV, 2019 WL 2385563, at *1 (Tex. App.—Dallas June 6, 2019, orig. proceeding) (mem. op.).

A writ of prohibition has three functions: (1) preventing interference with higher courts in deciding a pending appeal; (2) preventing an inferior court from entertaining suits that will re-litigate controversies already settled by the issuing court; and (3) prohibiting a trial court's actions when it affirmatively appears the court lacks jurisdiction. *Id*. An original proceeding seeking a writ of prohibition that does not serve one of these functions should be dismissed. *Id*.

Here, Wife requests this Court to issue a writ of prohibition to prevent respondent from issuing any orders that "'restrict, inhibit, or affect' NDAM." She asks for this relief only in the alternative to her request that the Court order respondent to recuse herself. Wife provides no briefing or argument explaining how this Court has jurisdiction to issue the requested writ of prohibition, and we see no such reason. Accordingly, we dismiss relator's petition for a writ of prohibition.

## C.    Writ of Injunction

Wife also requests "this Court [to] issue a [w]rit of [i]njunction against [Husband] from asserting any further claims for NDAM property either directly or

indirectly via [r]elator." Wife does not explain what she means by "any further claims for NDAM property." Based on her petition, her complaint appears to be that NDAM was not a party in the divorce proceedings, so Husband should not be able to assert any claims against it for Wife's separate property or for property owned by NDAM.

This Court has original jurisdiction to issue a writ of injunction only to "enforce the jurisdiction of the court." TEX. GOV'T CODE ANN. § 22.221(a); *In re City of Dallas*, No. 05-22-00657-CV, 2022 WL 2737672, at *1 (Tex. App.—Dallas July 14, 2022, orig. proceeding) (mem. op.). Wife does not explain how her requested relief is necessary to enforce this Court's jurisdiction, and we see no such reason. Accordingly, we dismiss this portion of relator's petition for want of jurisdiction.

## D.   Temporary Order Staying Execution

Wife also requests "a temporary order staying any execution, enforcement, and post-judgment discovery on the judgment during the pendency of the appeal." We construe this as a request for temporary relief pending the outcome of this original proceeding or appeal. This request is moot due to the issuance of this opinion. Further, to the extent Wife sought to stay enforcement of the relief awarded in the decree, her relief was to appeal from that judgment and supersede the judgment in accordance with rule of appellate procedure 24. TEX. R. APP. P. 24.1; *see id.* 25.1(h). Accordingly, we deny this portion of Wife's petition.

We turn to the issues in Wife's appeal that we did not resolve in conjunction with her original proceeding.

## A. Testimony of Bryan Rice

Wife's second issue involves the testimony of Husband's expert, Bryan Rice, an accountant with 32 years' experience. Wife argues the trial court abused its discretion in permitting Rice's testimony and also in crediting his interpretation of section 4.4 of the PMA. Section 4.4 provides that "community estate will arise or be created during [the] marriage as it applies to income generated from" NDAM with an exception for "funds reallocated into the business." Wife contends Rice should not have been able to testify about the meaning of "funds reallocated into the business."

Wife filed a pretrial motion to exclude Rice's testimony and an expert report he prepared. She did not dispute Rice's qualifications as an expert. She argued Rice's testimony was not relevant because the PMA was unambiguous and its construction was thus a matter of law for the court. After a pretrial hearing about two weeks before trial, the trial court denied Wife's motion. Rice testified at trial, but the court ended up excluding his report on grounds it was not timely provided to Wife.

We conclude Wife has waived any complaint about the admission of Rice's testimony interpreting the PMA. Wife did not renew her objection to Rice's

testimony at trial. Instead, she called him as a witness during her case in chief, before Husband presented his case. Her first questions to him were about the meaning of "funds reallocated into the business." Because Wife was the first to elicit testimony from Rice about the meaning of "funds reallocated into the business," she may not now be heard to complain that such testimony was inadmissible. *Cf. In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009) (party who has taken position in trial court that is clearly adverse to its position on appeal is estopped from asserting that position on appeal).

Even if we consider the merits of Wife's argument, there was no abuse of discretion in allowing Rice's testimony. We review the trial court's admission of evidence under an abuse of discretion standard. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014). A trial court abuses its discretion when it acts without reference to guiding rules and principles so that its ruling is arbitrary or unreasonable. *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016).

The trial court concluded the PMA was unambiguous and the parties do not argue otherwise. Wife cites the general rule that when a contract is unambiguous, extrinsic evidence may not be considered to alter or contradict its terms. *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 769 (Tex. 2018).

A contract is not ambiguous merely because the parties disagree about its meaning. *Id.* at 763. When a contract's meaning is disputed, a court's primary objective is to ascertain and give effect to the parties' intent as expressed in the

instrument. *Id.* We should never look to what the parties subjectively wished or hoped the contract said and instead interpret contract language according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise. *Id.* at 764. In ascertaining objective meaning, a certain degree of latitude is inherent in the inquiry, but there are absolute limits. *Id.* at 768. Parties cannot rely on extrinsic evidence to give the contract a meaning different from that which its language imports; to add to, alter, or contradict the terms contained with the agreement; make the language say what it unambiguously does not say; or show that the parties probably meant, or could have meant, something other than what the agreement stated. *Id.* at 769; *RPC, Inc. v. CTMI, LLC*, 606 S.W.3d 469, 484 (Tex. App.—Fort Worth 2020, pet. denied). There is a clear distinction between extrinsic evidence that illuminates contract language and extrinsic evidence that adds to, alters, or contradicts the contract's text. *URI, Inc.*, 543 S.W.3d at 767.

During her testimony, Wife gave her interpretation of "funds reallocated into the business." Although the testimony is unclear, it seems Wife's position is that NDAM had been saving for a new building and that about $700,000 of NDAM income she wanted to use for the building should be considered "funds reallocated into the business" and not community property. Wife later said, "[F]unds reallocated stands for . . . funds that we needed for the business."

When Wife called Rice as a witness, she asked him why he believed "funds reallocated into the business" meant contributions to capital. In analyzing the PMA,

–22–

Rice used the plain meaning of the words based on his 32 years as a CPA. He interpreted "funds reallocated into the business" to mean external monies coming from other sources. To Rice, it made no sense to say that "funds reallocated into the business" means the same thing as income. The net earnings of the business were always in the business to the extent they were not distributed. Based on his understanding as an accountant, the phrase meant contributions to capital, and his review of NDAM records during the marriage did not show any capital contributions.

When Rice was cross-examined by Husband's counsel, he expounded on why he believed "funds reallocated into the business" meant shareholder contributions of capital. He stated that "reallocated" meant the funds came from somewhere else. The phrase "into the business" meant the business entity on one side and the shareholder on the other side putting money into the business. In his opinion, there were two ways for a corporation to gain equity other than the accumulation of income. First, shareholders can capitalize the corporation and write checks to the business in exchange for stock. Second, shareholders can pay additional paid-in capital.

We conclude that Rice's testimony was not presented to alter or contradict the PMA terms. Rather, it was presented to help inform the PMA's meaning. Wife gave her version of the meaning of "funds reallocated into the business." It was not an abuse of discretion to allow Husband to provide an accountant's explanation of why

the plain meaning of the words in the PMA did not comport with Wife's version. Nor did the trial court abuse its discretion in awarding Husband an amount of money consistent with Rice's analysis of the amount of NDAM income generated during the marriage. We overrule Wife's second issue.

## B. Exclusion of Wife's Tracing Schedules

In her sixth issue, Wife contends the trial court abused its discretion in excluding from evidence two "tracing schedules," exhibits 31 and 32. Wife created the tracing schedules. Exhibit 31 purported to trace transactions in Wife's separate checking account during the marriage, and Exhibit 32 purported to trace transactions in the parties' joint checking account. Each exhibit was more than 30 pages long and contained spreadsheets with more than 20 columns, including columns representing "the percentage or ratio that should be applied to each transaction amount with W for Wife, H for Husband, C for community, or B for business."

When exhibits 31 and 32 were offered into evidence at trial, Husband objected to them because they were hearsay, because Wife was not qualified to prepare the schedules as she was not an accountant, and because the schedules were not admissible as a summary under rule of evidence 1006. TEX. R. EVID. 1006. The trial court sustained "each and every one" of Husband's objections.

On appeal, Wife challenges the exclusion of these exhibits only on grounds she was qualified to prepare them because she had knowledge of her personal and business finances. She has not presented any argument about whether the exhibits

–24–

contained hearsay or were admissible under Rule 1006. When a party objects to the admission of evidence for multiple reasons, the party attacking the trial court's decision to exclude evidence must attack all legitimate possible grounds that the trial court could have relied on to make its decision. *Goesling v. Am. Airlines, Inc.*, No. 02-22-00338-CV, 2023 WL 7037650, at *29 (Tex. App.—Fort Worth Oct. 26, 2003, pet. denied) (mem. op.). Wife has waived any error in the exclusion of the tracing schedules because she has not challenged on appeal all possible grounds supporting the trial court's ruling. *Id.* We overrule Wife's sixth issue.

## C. Husband's Alleged Breach of the PMA

In her fifth issue, Wife contends the trial court erred by not awarding her any damages on her breach of contract claim for Husband's failure to indemnify her. In her pleadings, Wife alleged that under the PMA each spouse's separate obligations should be paid for with his or her separate property. She argues that she paid for some of Husband's obligations with her separate property, and he owes her money for expenses she paid related to his children and related to their home, among other things.

The PMA contained several indemnity provisions. For example, in section 3.2, it provided that neither party will be responsible for any obligation with respect to the other party's children. In section 15, it also contained a provision that Wife waives the right to assert any claim for reimbursement against Husband's separate

–25–

estate, and vice versa. Wife argues the trial court erred in determining that she was not entitled to indemnification as a result of section 15.

We have not found anything in the record to indicate that contract interpretation was the basis for the trial court's failure to rule in Wife's favor on her breach of contract claim for indemnification. Prior to trial, Wife moved for partial summary judgment on her claim for indemnification. She attached various exhibits to her motion, including summaries of home improvement expenses, litigation expenses, and expenses related to Husband's children. The trial court did not rule on the summary judgment motion. During trial, Wife argued that section 15 of the PMA did not invalidate the other indemnity provisions in the agreement. The judge did not give any indication whether she agreed with this argument. The trial court's findings of fact and conclusions of law do not mention Wife's contract claims.

When reviewing a sufficiency challenge following a bench trial, we uphold the judgment on any theory of law applicable to the case. *Leach v. Conner*, No. 13-01-468-CV, 2003 WL 22860911, at *10 (Tex. App.—Corpus Christi–Edinburg Dec. 4, 2003, no pet.). Here, where there are no findings or conclusions regarding the contract claim, we must presume the trial court made all the necessary findings to support its judgment. *Sink v. Sink*, 364 S.W.3d 340, 343 (Tex. App.—Dallas 2012, no pet.).

The trial court could have determined that Wife did not prove her claim for indemnification. Wife's exhibits do not contain evidence of her damages as a result

of any failure to indemnify.  She attempted to offer a summary of home improvement expenses into evidence as Exhibit 60A.  The trial court sustained objections to the exhibit and it was not admitted.  Wife has not complained on appeal about the exclusion of that exhibit.  She also contends the tracing schedules she prepared, exhibits 31 and 32, were needed to prove her damages for Husband's failure to indemnify.  We have determined Wife waived her appellate complaint about the exclusion of the tracing schedules.

In her appellate brief, Wife cites her summary judgment evidence in support of her claim for indemnification.  We cannot consider it. Exhibits attached to summary judgment motions are not considered evidence outside the summary judgment context unless they are admitted into the trial court's record.  *Gonzalez v. Wasserstein*, No. 01-20-00826-CV, 2022 WL 3268528, at *5 (Tex. App.—Houston [1st Dist.] Aug. 11, 2022, no pet.) (mem. op.).  To be considered on an appeal from a trial on the merits, summary judgment evidence must have been introduced and admitted during the trial.  *Paselk v. Rabun*, 293 S.W.3d 600, 612 (Tex. App.—Texarkana 2009, pet. denied).

Wife testified she spent $48,204.01 of her separate property on home improvements and property taxes and that Husband did not contribute. She lacked any supporting documentation, and the trial court was not required to find her testimony conclusive.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 815–16 (Tex.

2005). We uphold the trial court's take-nothing judgment as to Wife's indemnification claim. We overrule Wife's fifth issue.

Finally, in issue seven, Wife argues the trial court erred by failing to find that Husband breached several provisions of the PMA. In addition to her claim for indemnity discussed above, Wife alleged that Husband breached the PMA by (1) "making a claim against a mutation of [Wife's] separate property;"(2) converting her separate property and attempting to convert NDAM property, and (3) asserting claims to non-marital assets.

An appellate brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i). Wife does not provide any citations to the record to show where we would find evidence to support her claims that Husband breached the PMA. Further, she cites no legal authority in this portion of her brief. We conclude Wife has inadequately briefed this complaint and waived it by failing to cite the record and any authorities in support of her argument. *See Mishkoff v. Garrett*, No. 05-22-01063-CV, 2024 WL 770142, at *7 (Tex. App.—Dallas Feb. 26, 2024, no pet. h.) (mem. op.). We overrule Wife's seventh issue.

## CONCLUSION

While this case was pending in this Court, Wife filed several motions. As of this date, five are still pending: (1) a January 3, 2024 Motion to Clarify Implied Ruling that the Lien against the McDonald Property is Valid; (2) a February 12, 2024

–28–

Emergency Motion to Vacate due to Clouded Title to Real Property and Threatened Lawsuits; (3) a February 20, 2024 Emergency Motion to Vacate Lien in Divorce Decree; (4) a February 26, 2024 Emergency Request for a Ruling and Motion to Stay Garnishment and Enforcement Proceedings; and (5) a March 6, 2024 Emergency Motion to Stay. By this opinion and by separate order of this date, we deny these motions as moot.

In conclusion, we deny Wife's petition for writ of mandamus, dismiss her petition for a writ of prohibition, and dismiss her petition for a writ of injunction. We also affirm the trial court's divorce decree.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

230051F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

CHERIE FAYE WOODWARD,
Appellant

No. 05-23-00051-CV     V.

BRIAN DAVID WOODWARD,
Appellee

On Appeal from the 468th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 468-50207-
2021.
Opinion delivered by Justice
Reichek. Justices Molberg and Smith
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee BRIAN DAVID WOODWARD recover his costs of this appeal from appellant CHERIE FAYE WOODWARD.


Judgment entered this 7th day of March 2024.